ARTHUR M. STEVENS, SR., Plaintiff and Counterdefendant-Appellee, *v.* THE PROTECTOSEAL COMPANY, Defendant, Counterplaintiff, and Third-party Plaintiff-Appellant.—(ARTHUR M. STEVENS, JR., Third-party Defendant-Appellee.)

(No. 59889;

First District (2nd Division)—April 8, 1975.

Arvey, Hodes, Costello, & Burman, of Chicago (G. Gale Roberson and J. Herzl Segal, of counsel), for appellant.

Samuel H. Young, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This appeal is taken from a decree of the circuit court granting plaintiff-appellee Arthur M. Stevens, Sr.'s request for specific performance of two agreements entered into with defendant-appellant Protectoseal Company (hereinafter defendant), and from judgments entered as part of the decree in favor of counterdefendant Arthur M. Stevens, Sr., and third-party defendant Arthur M. Stevens, Jr., on Protectoseal Company's counterclaim and third-party complaint.

Defendant prosecutes this appeal from that decree as well as from the trial court's adverse rulings on its motion to strike plaintiff's complaint and its motion for summary judgment. The following is a summary of the issues presented for review:

(1) whether the trial court erred in ruling that the allegations in the pleadings provided a basis for equitable jurisdiction to decree specific performance of two deferred compensation agreements;

(2) whether the evidence supported the trial court's decree; and

(3) whether the trial court erred in denying defendant's motion for a continuance.

The following facts and summary of the pleadings provide the setting for the actions giving rise to this appeal.

Employed by defendant since 1942, plaintiff became its controller in 1945, a vice president in 1948, and was elected its president in 1953. On July 1, 1961, plaintiff and defendant entered into a deferred compensation agreement wherein plaintiff agreed to devote his entire time and attention to the business of defendant, and defendant in turn agreed to pay the plaintiff $20,000 per year. The agreement further provided that upon plaintiff's voluntary or forced retirement, defendant shall pay him $869 per month for 7 years certain and thereafter for the duration of his life:

> "[P]rovided he shall execute and deliver to the COMPANY a lifetime consultant, non-competing and non-disclosure agreement, and provided further that during the term of this Agreement he has not accepted directly or indirectly employment from or work for, nor has been interested in the business of any person, firm, association, or corporation other than the COMPANY."

On June 2, 1970, plaintiff and defendant entered into a second agreement as a compromise in settlement of litigation between them involving the alleged wrongful removal of plaintiff as president, chief executive officer, and chairman of the board of defendant. This agreement provided that plaintiff dismiss his appeal in a matter pending at that time; that pursuant to the agreement of July 1, 1961, he serve defendant as a lifetime consultant for which defendant would pay to plaintiff in addition to the deferred compensation called for in the earlier agreement, the sum of $9,572 for 2 years and $4,572 per year thereafter for the duration of plaintiff's life; and finally, plaintiff agreed that:

> "[D]uring his lifetime he shall not accept directly or indirectly, employment from or render service or assistance to, or be interested in the business of any competitor or potential competitor * * * * ."

In September, 1971, plaintiff sold his stock holdings in the defendant company to Charles Barancik, president and chairman of the board of Justrite Manufacturing Company, an active competitor of defendant. In conjunction with the stock sale, plaintiff gave to Barancik copies of various annual reports of defendant's financial condition as well as defendant's shareholders list dated May 4, 1970. At the first shareholders meeting following the stock sale, Barancik was elected to defendant's board of directors, and consequently, additional information relating to defendant's activities came into his possession.

Plaintiff continued to receive payment under his agreements with the defendant until December 1, 1971, and thereafter, on February 24, 1972,

filed his complaint in equity for specific performance alleging the existence of the two agreements; that, since his retirement from the presidency of defendant, he had at all times maintained himself in a consulting capacity having offered his services to defendant on numerous occasions; that he had otherwise complied with all the conditions of the agreements; that he had retired and was in need of funds for payment of his living expenses; that defendant had failed and refused to make payments to him; and that he had no adequate remedy at law since it would create a multiplicity of actions harmful and wasteful to the parties were he to bring suit for each payment defendant had failed to make and will fail to make in the future.

In its answer to the complaint, defendant admitted the execution of the two agreements and denied plaintiff's allegations of performance. Defendant went on to deny any obigation to plaintiff under either of the agreements, alleging the nonhappening of the express conditions in the July 1, 1961, agreement thereby excusing its performance thereunder, and alleging that plaintiff committed material breaches of his promise (undertaken in the June 2, 1970, agreement) not to "render service or assistance to, or be interested in the business of any competitor" of defendant in that he "willfully and knowingly rendered service and assistance to Justrite Manufacturing Company, of Chicago, Illinois, a direct competitor of defendant." Defendant further stated that if plaintiff had any remedy, it would be fully available to him in an action at law and accordingly defendant renewed its motion to strike the complaint or, alternately, transfer the matter to the Law-Jury Division of the court.

In his reply to defendant's answer, plaintiff denied any breach of his agreements with defendant; admitted the sale of all his stock to Barancik; and further stated that in connection with that sale and pursuant to the advice of his legal counsel, he had furnished Barancik with certain financial information and a copy of defendant's shareholders list so as to insure compliance with the Federal and State securities laws.

Defendant then filed its counterclaim against plaintiff and a, third-party complaint against Arthur Stevens, Jr., plaintiff's son. The counterclaim, along with plaintiff's answer, restated the substance of their original pleadings. The third party complaint alleged that Stevens, Jr., had negligently performed his duties and wasted corporate assets while, as an employee of defendant, he owed a managerial responsibility to it. Stevens, Jr., denied the allegations.

Subsequently, defendant filed its motion for summary judgment wherein it alleged "that there is no genuine issue as to any material fact with respect to the lack of equity jurisdiction to grant specific performance in this case, and that as a matter of law the complaint should be dis-

missed for want of equity." The trial court found otherwise and denied the motion.

At trial plaintiff testified that he first discussed the sale of his stock at the instance of Barancik. Shortly thereafter Mitchell Davis (defendant's secretary and general counsel) offered to find a buyer for plaintiff's stock without knowing of Barancik's interest. Upon Davis's failure to do so, plaintiff sold the stock to Barancik. During their negotiations preceding the sale, plaintiff gave Barancik all the information which plaintiff believed pertinent to the evaluation of the stock, and also gave partial credit to his son for defendant's success. The contract of sale, between plaintiff and Barancik, included an employment agreement between Justrite and Stevens, Jr., and plaintiff's son began working for Justrite in November, 1971.

Charles Barancik testified that, once he and plaintiff had orally agreed to the sale of plaintiff's stock, he reviewed a condensed version of defendant's current annual shareholders report, and when he signed the contract of sale, plaintiff gave him copies of defendant's shareholders list as well as various company financial statements. After Barancik's election to defendant's board of directors, plaintiff supplied him with additional documents at the latter's request. Barancik further stated that, while on defendant's board of directors, he did not learn a great deal about defendant's operations and has never used any such information to the competitive disadvantage of defendant.

Joseph W. Koss, defendant's manager and president, then took the witness stand and identified a host of documents which, in the witness's opinion, were confidential material.

The trial ended prematurely when, having previously granted a number of defense motions for continuances, the trial court refused to grant an additional continuance based upon the trial court's impression that defense counsel was reluctant to bring the litigation to a conclusion.

During the direct examination of the first defense witness, Joseph W. Koss, defense counsel had sustained injuries, apparently serious, in an auto accident. The court granted two continuances on account of counsel's injuries, and on the last date set for trial, defense counsel appeared in court to present his motion supported by his own affidavit and that of his physician that he had not yet recovered sufficiently to participate in a contested lawsuit, and that intensive mental tension would be harmful to him at that time. The doctor further expressed the opinion that defense counsel would be able to resume his trial activities in approximately 5 weeks.

Plaintiff submitted no counteraffidavits, offered no evidence in opposition to the motion, and made no showing that a continuance of 5 weeks

would be harmful to his case. Nevertheless, the trial court denied the motion and directed plaintiff's counsel to prepare a decree.

## I.

Defendant first contends that the complaint contained no allegations which would sustain equity jurisdiction. It maintains that the action is simply one to recover money allegedly due under two contracts between the parties.

Plaintiff on the other hand urges that certain of the allegations in his complaint are sufficient to sustain equity jurisdiction. His alleged performance and further willingness to perform, plaintiff maintains, is sufficient under Illinois law to entitle him to specific performance.

■■ We recognize at the outset that the Judicial Article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our State's circuit courts have "original jurisdiction of all justiciable matters." (Ill. Const. (1970), art. VI, § 9.) The purpose of section 9 was to create a single integrated trial court structure (Ill. Ann. Stat. Const. art. VI, § 9, Constitutional Commentary (Smith-Hurd 1971), thereby vesting the circuit courts with jurisdiction to adjudicate all controversies. (*In re Estate of Marcucci* (1971), 5 Ill. App.3d 484, 493, 285 N.E.2d 141, *reversed on other grounds*, 54 Ill.2d 266, 296 N.E.2d 849; see also *Haas v. Pick Galleries, Inc.* (1973), 12 Ill. App.3d 865, 868, 299 N.E.2d 93.) Consequently, so long as a case presents a justiciable matter, the circuit court has jurisdiction and the presence or absence of an adequate remedy at law is an irrelevant consideration. (Fins, *Re-Examination of "Jurisdiction" in Light of New Illinois Judicial Article* (1964), 53 Ill. Bar J. 8, 11-12 (1964).)[1] In the case at bar then, the issue is not whether the trial court had equitable jurisdiction, but more appropriately, whether it properly entertained and granted a request for equitable relief.

■■ It is a principle so well settled as to preclude the necessity for citation of authority that a party cannot seek equitable relief when he has an adequate legal remedy. Equity relief under such circumstances would

---

[1] The Circuit Court of Cook County, by a general order promulgated March 1, 1966 (issued following an amendment effective January 1, 1964 to the 1870 Illinois Constitution) and revised as late as October 1, 1972, states that the circuit court is organized and composed of departments and divisions, including both the "Law" and "Chancery" divisions of the County Department. The general order then proceeds to set forth the type of actions to be heard by the law and chancery divisions. Each division has equal and concurrent subject matter jurisdiction. The law division hears civil actions at law which include actions in the nature framed by the pleadings in this case; and the chancery division is authorized to hear actions involving specific performance of contracts.

deprive the defendant of his constitutional right to a jury trial. (*Mc-Ginniss v. First National Bank* (1919), 214 Ill.App. 295, 299.) Accordingly, a court will decree specific performance only when the remedy at law is inadequate as where fraud has been alleged and established (*Loewenthal Securities Co. v. White Paving Co.* (1931), 259 Ill.App. 612, 620), where the subject matter of the contract has some unique intrinsic value as in a contract for the sale of real estate (*Voris v. McIver* (1930), 339 Ill. 340, 349, 171 N.E. 263), or where the measure of damages is difficult to ascertain. (*Ingram v. Hammer Brothers White Lead Co.* (1933), 269 Ill.App. 87, 88-89.) Where the mere payment of money would provide sufficient relief, however, a court will not entertain a request for specific performance since the legal remedy is adequate as to this. *Ingram v. Hammer Brothers White Lead Co., supra*; 33A I.L.P. *Specific Performance* § 11 (1970).

■■ In the case at bar we have found nothing either in the pleadings or in the materials submitted by plaintiff on appeal to indicate that he sought anything more than the monies allegedly due and owing him from defendant pursuant to the deferred compensation agreements:[2] Absent the special circumstances recognized in the above-cited authority, specific performance was not the appropriate remedy.

Plaintiff further maintains that his legal remedy was inadequate since, should he recover damages for past breaches, he would have to resort to the same legal remedy each month after the payments became due. On the other hand, the court, exercising its equity jurisdiction, could retain jurisdiction of the case in order to enforce the contracts' terms in future months.

■■■ This argument assumes that a party who has performed in the past and interrupts its performance on account of an alleged breach will not perform in the future once that issue has been litigated and decided in favor of the allegedly breaching party. Such an assumption is unwarranted. Even if we were to concede plaintiff's position for purposes of argument, it would not prevail for the additional reason that a court will not exercise its equity power to avoid a multiplicity of suits when the cause of action exists between the same parties. (*Chicago Public Stock Exchange v. McClaughry* (1894), 148 Ill. 372, 381, 36 N.E. 88.) The pos-

---

[2] In its memorandum opinion and denial of defendant's motion for summary judgment the trial court concluded, among other things, that plaintiff's allegation of performance and defendant's corresponding denial of such, raised factual questions which, if resolved in plaintiff's favor, might require a decree of specific performance since a court of equity will enforce a contract for services where one party has fully performed if failure to carry out the agreement will operate as a fraud upon him. This statement by the court presumes that the facts as pleaded presented an issue of fraud, but the pleadings submitted by plaintiff contained no allegations of fraud.

sibility of a multiplicity of suits between the same parties does not justify a request for an equitable remedy in a claim for damages for repeated violations of a contractual obligation. *Lipkin v. Burnstine* (1958), 18 Ill. App.2d 509, 521, 152 N.E.2d 745.

It is readily apparent then that the instant case involved none of the special circumstances that ordinarily warrant a decree of specific performance. Accordingly, the trial court erred both in permitting plaintiff to seek specific performance of his agreements with defendant, in not granting defendant's motion to transfer to the law division where a jury trial could be obtained, and in ultimately granting plaintiff's prayer for relief. We conclude that the significant factual questions presented by the pleadings (*e.g.*, the interpretation to be given to the terms of the contracts and whether plaintiff's actions constituted a breach of those agreements) necessitate our reversal of the trial court's judgment, and we remand the cause with directions that the cause be transferred to the law division for a new trial so as to afford defendant the opportunity to present those questions to a jury.

## II.

After reviewing the entire record, we are constrained to also note that upon the record the trial court abused its discretion when it denied defendant's motion for a continuance and abruptly proceeded to enter its decree. The supporting affidavit submitted by defense counsel's physician verified that the continuance was for good cause and not merely intended to be a dilatory tactic. Since plaintiff offered no counteraffidavit and made no showing of any prejudice that might result from such a continuance, we are at a loss to find any justification for the trial court's action.

For the reasons indicated, the judgment of the circuit court of Cook County is reversed and the cause is remanded with directions.

Judgment reversed and remanded with directions.

LEIGHTON and HAYES, JJ., concur.