(No. 49487.—

# CHICAGO SHERATON CORPORATION *et al.*, Appellants, v. SEYMOUR ZABAN *et al.*, Appellees.

*Opinion filed Jan. 20, 1978.—Rehearing denied March 30, 1978.*

Gerald Rose, of Chicago (James B. Muskal and John E. Rosenquist, of Leydig, Voit, Osann, Mayer & Holt, Ltd., of Chicago, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Michael F. Baccash, Assistant State's Attorney, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Chicago Sheraton Corporation, appealed from the judgment of the circuit court of Cook County entered in favor of defendants, Seymour Zaban and Harry H. Semrow, sued individually and as members of the Cook County board of appeals, and Thomas M. Tully, Stanley T. Kusper, Jr., and Edward J. Rosewell, respectively assessor, county clerk and treasurer of Cook County, upon allowance of their motion to dismiss plaintiff's action seeking an injunction and other relief. We allowed plaintiff's motion filed pursuant to Rule 302(b) (58 Ill. 2d R. 302(b)) and ordered that the appeal be taken directly to this court.

In plaintiff's complaint containing five counts, it is alleged in counts I through IV that plaintiff is the owner of real estate located at 505 North Michigan Avenue in Chicago improved with a hotel building, that the property is located in the north quadrant of Cook County and for real estate tax purposes is comprised of four parcels of improved real estate; that the tax year 1972 was the first year of the quadrennium for the north quadrant of Cook County; that the assessor gave notice of a proposed

increase in assessed valuation from $6,095,952, its assessed value during the 1968 quadrennium, to $8,315,456; that "Plaintiff complained to the Assessor and presented evidence sufficient to obtain from the Assessor a reduction in the proposed assessment of the hotel for the 1972 quadrennium to $6,090,152"; that the assessor's property record cards were formally revised to reflect the assessment reduction; that errors in transcribing data from the property record cards for entry into the assessment books or errors of calculation resulted in an assessed valuation for 1972 of $8,750,335; that the assessor's property record cards acknowledged that such errors were made; that the board of appeals certified the erroneous 1972 assessments and the treasurer extended them and sent out 1972 tax bills based on those erroneous assessments; that upon receipt of the 1972 real property tax bills plaintiff complained to the assessor, that the assessor acknowledged the mistakes in the assessment of the property "causing to be marked on each of the bills *** a Certificate of Error [citation] to reduce the assessments to those which he had previously determined to be correct"; that plaintiff paid the real property taxes for the year 1972 on the basis of the tax bills as corrected and relying on the said certificates of error did not pay the erroneous taxes based on the erroneous assessments; that for each succeeeding year of the 1972 quadrennium, the real property taxes assessed and levied against the property were based on the assessor's revised assessments for the quadrennium; that the defendant members of the board of appeals delayed issuing statutory notice and delayed holding a hearing with respect to whether the board of appeals would endorse the certificates of error until 1976, long after the collector's 1972 annual application for judgment and order of sale; that plaintiff appeared at the hearing and presented evidence of the aforesaid mistakes, but the defendant members of the board of appeals refused to endorse the

certificates of error with their concurrence. It was further alleged that the board's refusal to endorse the certificates of error was arbitrary and capricious, and resulted in an assessment increase without notice and in a constructively fraudulent assessment and tax and that plaintiff had exhausted all administrative remedies and had no adequate remedy at law. The allegations of count V will be considered later in this opinion. Defendants moved to dismiss the complaint on the grounds that plaintiff had not exhausted its administrative remedies and that it had an adequate remedy at law. Upon allowance of the motion, the circuit court dismissed plaintiff's action with prejudice and this appeal followed.

It appears from the pleadings that the notice of assessments for the 1972 quadrennium was published in a newspaper of general circulation within the assessment district and that thereafter the board of appeals gave notice by publication (Ill. Rev. Stat. 1971, ch. 120, par. 596) that from January 29, 1973, until February 13, 1973, it would receive complaints concerning assessments for the tax year 1972. Plaintiff admittedly did not file a complaint (ch. 120, pars. 597, 598) with the board of appeals challenging the assessment.

Plaintiff contends that the assessments were grossly excessive and constructively fraudulent; that where assessments are constructively fraudulent and there is no adequate remedy at law, the diligent taxpayer may seek equitable relief; that by reason of its delay in holding a hearing the board of appeals is estopped from refusing to endorse the certificates of error; that the hearing held before the board of appeals did not meet the requirements of the due process clause and that its decision not to endorse the certificates of error is reviewable on the ground that such refusal was constructively fraudulent. It is defendants' position that the statute does not provide for participation by the taxpayer in the procedure for

certificate of error and that it involves only the tax assessment officials and the court; that plaintiff had an adequate remedy at law, of which it failed to avail itself; that it should have complained of the assessment to the board of appeals, and failing to obtain relief, should have objected at the collector's application for judgment.

The statutory provisions relevant to this controversy are sections 123, 117, 118 and 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, pars. 604, 598, 599, 675). Section 123 provided:

> "In counties containing 1,000,000 or more inhabitants, if, at any time before judgment is rendered in any proceeding to collect or to enjoin the collection of taxes based upon any assessment of any property belonging to any person or corporation, the county assessor shall discover an error or mistake in such assessment, such assessor shall execute a certificate setting forth the nature of such error, and the cause or causes which operated to produce it. The certificate when endorsed by the board of appeals showing its concurrence therein, and not otherwise, may be received in evidence in any court of competent jurisdiction, and when so introduced in evidence such certificate shall become a part of the court records, and shall not be removed from the files except upon the order of the court.
>
> A certificate executed pursuant to this Section may be issued to the person erroneously assessed or may be presented by the assessor to the court as an objection in the application for judgment and order of sale for the year in relation to which the certificate is made." Ill. Rev. Stat. 1971, ch. 120, par. 604.

Sections 117 and 118 provided that any taxpayer believing his property "is over assessed or under assessed or is exempt" may also file a written complaint with the board of appeals which, after a hearing, may order the assessment corrected. (Ch. 120, pars. 598, 599.) Under the provisions of section 194, if the taxpayer is not satisfied with the order of the board of appeals, he may pay the tax under protest (ch. 120, par. 675) and object to the

collector's application for judgment and order of sale, thus obtaining judicial review of the assessment and tax. An examination of the statutory scheme shows that the certificate of error procedure provided in section 123 is intended to be separate and distinct from the procedure available to a taxpayer under sections 117, 118 and 194.

Prior to the amendment effected by the enactment of Public Act 77—1466 (approved September 7, 1971), section 123 (Ill. Rev. Stat. 1969, ch. 120, par. 604) provided that if at any time before judgment was rendered in any proceeding to collect or enjoin the collection of taxes the board of appeals discovered "an error or mistake (other than errors of judgment as to the valuation of any real or personal property)," it could issue a certificate of error. If the county assessor endorsed his concurrence in the certificate of error, it could be received in evidence in any court of competent jurisdiction. Unlike section 122 (ch. 120, par. 603), which expressly provided for notice to the taxpayer and a hearing, section 123 either before or after amendment made no provision for participation by the taxpayer in the certificate of error process or for a hearing before either the assessor or the board of appeals.

Plaintiff contends that notice and hearing are implicit in the proceeding and to interpret the statute to require neither notice nor hearing would render it violative of the due process clause. It argues, too, that the General Assembly clearly intended that the assessor and board of appeals execute the certificate in time for it to be presented as an objection in the collector's application for judgment and order of sale and that a delay of three years in setting the hearing violated the statute. We do not agree. We are of the opinion that the General Assembly intended the certificate of error procedure to be an expeditious summary process, without participation by the taxpayer, for correcting the assessor's errors. The requirements of due process are "that the property owner be given notice

and an opportunity to be heard upon the valuation of his property at some point in the taxing process before his liability to pay the tax becomes conclusively established" and that "the taxpayer is not entitled to notice and an opportunity to be heard at each stage, or at any particular stage, of the assessment procedure." (*Dietman v. Hunter,* 5 Ill. 2d 486, 489. See also *Little Sister Coal Corp. v. Dawson,* 45 Ill. 2d 342.) Plaintiff does not dispute that the assessor published notice of the quadrennial assessment as provided in section 104 (ch. 120, par. 585) and that the board of appeals gave notice of its meetings as required by section 115 (ch. 120, par. 596). We hold that section 123 did not require the board of appeals to hold a hearing concerning the certificate of error and plaintiff had neither a statutory nor constitutional right to participate in the certificate of error proceeding or to challenge any alleged irregularities in that proceeding.

We consider next plaintiff's contention that the decision of the board of appeals is reviewable "where it is charged that there was actual or constructive fraud." The judgment of the circuit court having been entered upon allowance of defendants' motion to dismiss, the allegation that the quadrennial assessment was constructively fraudulent must be taken as true (*Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill. 2d 93), and defendants concede that at this stage of the case "there is no dispute as to the quadrennial assessment being constructively fraudulent." They contend, however, that under *Clarendon Associates v. Korzen,* 56 Ill. 2d 101, equitable relief must be denied. *Clarendon* presented squarely the question whether equity will enjoin the collection of taxes based on constructively fraudulent assessments. After citing early cases allowing the equitable remedy, discussing the enactment and purpose of the 1933 amendments to the Revenue Act of 1872 which required the payment of at least 75% of the tax under protest as a condition precedent

to the filing of an objection to the application for judgment, and recognizing that *dictum* in cases decided subsequent to the 1933 amendments indicated that equity might grant relief from a constructively fraudulent assessment, the court held that equity will not enjoin the collection of taxes based on a constructively fraudulent assessment unless the assessment is so fraudulently excessive as to render the remedy at law unavailable to the plaintiff. (See also *La Salle National Bank v. County of Cook,* 57 Ill. 2d 318.) We find no basis in this record to hold this exception applicable.

We consider now plaintiff's contention that defendants are estopped from refusing to endorse the certificates of error. Plaintiff argues that because it relied upon the 1972 certificate of error it did not pay the erroneously assessed taxes and therefore could not object to the collector's 1972 annual application for judgment and order of sale. It argues that because the collector "computed the tax bills based on the Certificates of Error, accepted the correct payment and receipted the bills" it "did not perfect alternative remedies." Exhibits attached to the pleadings show that the time for filing a complaint before the board of appeals was from January 29, 1973, until February 13, 1973. Plaintiff did not file a complaint with the board of appeals within that period. The exhibits also show that the assessor did not enter the certificates of error until May 3, 1973, approximately three months after the last date on which a complaint could have been filed before the board. Under these circumstances we fail to perceive in what manner plaintiff was prejudiced. Clearly, plaintiff's situation would not have been any different had the board refused to endorse the certificates of error on the day they were entered by the assessor. Having failed to timely file a complaint before the board, plaintiff was precluded from pursuing the statutory remedy of objection in the collector's application for judgment proceeding.

(*People ex rel. Korzen v. Fulton Market Cold Storage Co.,* 62 Ill. 2d 443.) We find no basis for holding that the board of appeals is estopped from refusing to endorse the certificates.

We consider now the allegations of count V of plaintiff's complaint. In this count plaintiff seeks "recovery in favor of the People of the State of Illinois for the use of Chicago Sheraton Corporation" against the defendant members of the board of appeals, jointly and severally. The action is based upon section 323 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 804), which in pertinent part provides that "Every county clerk, assessor, collector or other officer who shall in any case refuse or knowingly neglect to perform any duty enjoined upon him by this Act *** shall *** be liable, on the complaint of any person, for double the amount of the loss or damage caused thereby ***." It was alleged that the assessor "has a statutory duty to equitably and uniformly assess all taxable property" and "to propose Certificates of Error in the event of overassessments"; that the members of the board of appeals have a statutory duty "of ordering correction of overassessments"; that the members of the board "by their refusal to endorse their concurrence to the Assessor's proposed Certificates of Error" for the hotel "knowingly neglected or refused to perform their statutory duty of ordering correction of overassessments"; and that "By reason of such neglect or refusal, Plaintiff Chicago Sheraton Corporation has incurred losses or damages, including attorneys' fees for bringing on and prosecuting the within action."

To recover on this count, plaintiff would be required to prove an "overassessment" and the board's refusal or "knowing neglect" to correct the "overassessment." Under the relevant statutes plaintiff had the right to file a complaint with the board of appeals and challenge the "erroneous" assessment, and if the board failed to correct

the "overassessment," file an objection based on the "overassessment" at the collector's application for judgment and obtain a judicial determination of the correctness of the assessment. Having failed to pursue this remedy, plaintiff obviously cannot recover double damages based on the board's alleged refusal or "knowing neglect" to correct the "overassessment." If plaintiff's theory of liability were adopted, a taxpayer could elect not to follow the statutory procedure and instead attempt to prove an "overassessment" in an action of this type with the possibility of recovering *"double"* the amount of the saving which could have been effected by proving "overassessment" before the assessor, the board of appeals or in the collector's application for judgment proceeding.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*