593 F.2d 808
 CHICAGO SHERATON CORPORATION, an Illinois Corporation,
Plaintiff-Appellant,
v.
Seymour ZABAN and Harry H. Semrow, Individually and as
Members of the Cook County Board of Appeals, et
al., Defendants-Appellees.
 No. 78-1392.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 10, 1979.
Decided March 20, 1979.
Rehearing and Rehearing In Banc Denied May 24, 1979.
 
 Gerald S. Rose, Chicago, Ill., for plaintiff-appellant.
 Michael F. Baccash, Asst. State's Atty., Chicago, Ill., for defendants-appellees.
 Before SWYGERT and BAUER, Circuit Judges, and EAST, Senior District Judge.[1]
 SWYGERT, Circuit Judge.
 
 
 1
 The underlying issue presented in this appeal is whether the district court erred in dismissing the complaint for failure to state a claim. The immediate and dispositive issue, however, is whether the district court was correct in holding that the action was barred.
 
 
 2
 The facts alleged in the complaint are essentially undisputed and are recited in the opinion of the Supreme Court of Illinois in the prior state court litigation. Chicago Sheraton Corp. v. Zaban, 71 Ill.2d 85, 15 Ill.Dec. 634, 373 N.E.2d 1318 (1978). We see no reason why these facts should be repeated.
 
 
 3
 The important point for decisional purposes, as Judge Grady determined in his order of February 27, 1978, is that the plaintiff "raised and litigated its federal claim of denial of due process before the Illinois Supreme Court without any attempt to reserve these questions for federal court decision and that the Illinois Supreme Court decided the federal due process claim." Judge Grady went on to hold that under such circumstances, the plaintiff was barred "from attacking the court's decision by res judicata," and that the only avenue left open for plaintiff was to seek review in the United States Supreme Court.
 
 
 4
 Subsequent to the district court's order of dismissal the plaintiff did appeal to the Supreme Court from the judgment of the Supreme Court of Illinois which had affirmed the dismissal by the state trial court of plaintiff's claim. On October 10, 1978 the United States Supreme Court dismissed the appeal "for want of a substantial question," and on November 27, 1978 the Court denied a petition for rehearing.
 
 
 5
 This appeal is controlled by Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1974), and Mandel v. Bradley, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977). Cf. Hogge v. Johnson City Manager, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976); Colorado Springs Amusements v. Rizzo, 428 U.S. 913, 913-23, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976) (Brennan, J., dissenting from denial of cert.). We have examined the jurisdictional statement in the appeal to the Supreme Court, the opinion of the Illinois Supreme Court, and the briefs filed by the parties before that court and conclude that the precise constitutional claim of deprivation of due process as presented here was presented and decided by the Illinois Supreme Court and by summary dismissal of the appeal in the United States Supreme Court.
 
 
 6
 We do not base our decision on the res judicata effect of the Illinois Supreme Court decision. The United States Supreme Court never has held that res judicata applies to bar relitigation under section 1983 of actions originally adjudicated in state court, See Preiser v. Rodriguez, 411 U.S. 475, 509 n. 14, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting), and we do not so hold now. Our decision is based on the principle of Hicks v. Miranda, supra, 422 U.S. at 343-46, 95 S.Ct. at 2288-2290, that a summary disposition for want of a substantial federal question is controlling precedent. Given that the issues presented to us are essentially identical to those disposed by the Supreme Court, we are compelled to affirm the dismissal of plaintiff's complaint.
 
 
 7
 Although plaintiff makes a conclusory allegation of a denial of rights protected by the Equal Protection Clause of the Constitution, that claim was neither briefed nor argued in this appeal. In these circumstances, we do not regard the allegation as affecting our conclusion that the district court's dismissal of plaintiff's complaint must be affirmed.
 
 
 8
 BAUER, Circuit Judge, concurring.
 
 
 9
 The facts in this case, as pointed out in the majority opinion, are fully set forth in Chicago-Sheraton Corp. v. Zaban, 71 Ill.2d 85, 15 Ill.Dec. 634, 373 N.E.2d 1318 (1978). What is fascinating about those facts is the "Catch-22" aspect to the entire business of tax assessment and collection.
 
 
 10
 The County Assessor is required by law to place a valuation upon each taxable piece of property within the county. The assessment so prepared is then published, or formal notice is given to the taxpayer. If, in the opinion of the taxpayer, the assessment is in error, then two options are open to him: he can attempt to convince the assessor that the assessment is in error, or file a complaint with the board of appeals and ask for a hearing. The first choice is simple and summary; it saves both time and money for the taxpayer And the government. The second option is time consuming and obviously more expensive. As a matter of practical fact, a taxpayer who has a legitimate belief that some error in assessment has occurred will intelligently seek to point this out to the assessor and, if successful, procure from him a certificate of error; that is, an official statement by the assessor that an error has been committed by him and that such error should be corrected by the board of appeals. The statute requires that the certificate of error set forth the nature of the error and the cause or causes which operated to produce it. If the board of appeals concurs (by endorsement), the certificate is a bar to the collection of taxes on that much of the assessment that is in error. Ill.Rev.Stat. ch. 120 § 604.
 
 
 11
 No provision is made for any presentation of fact in the board of appeals review of the certificate the facts are fully contained in the certificate itself. (I assume that nothing precludes the board from its own investigation of the facts to verify or refute the alleged mistake or error otherwise the required concurrence would seem a silly provision.)
 
 
 12
 Having procured from the assessor an admission of error and having been assured of the issuance of the certificate reciting the cause (in this case apparently a computer error), the taxpayer, absent new facts being brought to the attention of the board of appeals, should be able to rest secure in the knowledge that his government is working, he is paying his fair share of the tax burden of the county, and that, although government may err, good government has found a way to correct the error. Not so! If the board of appeals does Not concur, and a formal complaint as to the assessment has not been filed, then the taxpayer has lost; moreover, the taxpayer has lost without even finding out why or how or on what predicate. The board may, as it did in this case, simply refuse to endorse the certificate of error, without hearings, without argument, without comment and, seemingly, without reason. The rule of law that this case stands for is simple: when the assessor (or his equipment) makes an error, the taxpayer who relies on the assessor to correct his own error is in peril. The facts, admitted by the defendant in this case, are not in dispute. An error was made, it resulted in a gross tax disadvantage to a taxpayer, the tax assessor sought to correct the error but was not permitted to do so; nor can the taxpayer find relief in any avenue in spite of having relied on the statute, the assessor, the integrity of the board of review and, I would suggest, common sense.
 
 
 13
 In fairness, Illinois should strike from the books the provision for an assessor issuing a certificate of error. It is not a remedy; it is a trap.
 
 
 14
 If there were no possibility of the issuance of a certificate of error, every taxpayer would at least realize that he Must file timely objection to the assessment with the board of appeals never mind the added burden to taxpayer and government.
 
 
 15
 One other thought might occur to the legislature: provide in the law the one thing the plaintiff seeks a rule requiring the board of appeals to state Why it refuses to permit the assessor to correct his own mistakes (and bring relief to an aggrieved taxpayer) and to provide a forum to develop facts if there is a factual dispute. (If the certificate of error is denied there Must be a factual dispute unless the action is totally without meaning.)
 
 
 16
 Each state seeks, at least in principle, to attract business and to fairly assess and collect its taxes all for the good of its citizens. The situation presented by the instant case strikes me as a strange way to accomplish Either objective. The very least a taxpayer should be entitled to know is Why he is being treated unfairly and unjustly.
 
 
 17
 Having said all that with the fervor of an Illinois taxpayer I acknowledge that the decision of Hicks v. Miranda mandates the result reached in this case. I wish it were otherwise. I reluctantly concur.
 
 
 
 [1]
 United States Senior District Judge for the District of Oregon, sitting designation