CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THOMAS M. TULLY, Assessor of Cook County, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-1119

Opinion filed September 4, 1979.—Rehearing denied September 25, 1979.

William L. Button, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

A 1974 real estate assessed valuation of certain property located in the city of Chicago is the focal point of this appeal. Plaintiffs attack that valuation and the resulting assessment as excessive and further assert that: it violates statutory standards; the statute pursuant to which it was made is unconstitutional; and, they have been denied hearings to which they are entitled on these claims. The underlying issue here, however, is whether the circuit court of Cook County erred in granting summary judgment to defendants on the ground that adjudication of the issues asserted by plaintiffs was barred by a prior judgment.

For the reasons stated below, we affirm.

Frank and Lila B. Doss, Harry S. and Jean M. Nachman and Kjell A. and Doris E. Larsen are beneficiaries under a land trust pursuant to which Chicago Title and Trust Company holds title to certain real estate known as 1555-57 East 61st Street in the city of Chicago. In their amended complaint filed in Cook County circuit court these plaintiffs named as defendants Thomas M. Tully, Cook County assessor, Patrick Doody, deputy assessor, and board of appeals commissioners Seymour Zaban and Harry Semrow.

The original complaint in this action was filed on or after December 20, 1974, by Frank G. Doss only, naming as sole defendant Thomas Tully, under which judgment for $24,882 plus costs and interest were sought. The basis of the action was section 322 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 803), which establishes liability of certain assessment officials who "refuse or knowingly or wilfully neglect any duty" imposed on them by law. Plaintiff alleged malicious and intentional overassessment of the subject property under the 1974 assessment. A first amended complaint was filed on March 31, 1975, and contained two counts, the first substantially similar to the original complaint, the second proceeding on essentially the same basis for the same amount against Zaban and Semrow. On July 14, 1975, a five-count second amended complaint was filed, naming as parties all those involved in the present appeal. Count I of the complaint was dismissed with prejudice and count II was stricken on November 14, 1975. A third amended count II was filed on December 10, 1975.

On April 27, 1977, defendants filed a motion for summary judgment on the counts then pending. That motion, with accompanying affidavits and exhibits, showed that real estate taxes were levied against plaintiffs' property for tax years 1972, 1973, 1974 and 1975, which were unpaid. On the basis of the unpaid taxes for 1974, the subject property was listed in the county collector's 1974 tax judgment, sale, redemption and forfeiture record, and was dealt with in the annual judgment and order of sale entered in Cook County circuit court on December 5, 1975, which included

an express finding that proper notice of the proceedings had been given and no sufficient defense or cause why judgment should not be entered had been shown. Subsequently the property was offered for sale, but was forfeited to the State of Illinois for want of a bidder at the sale. On August 22, 1977, defendants' motion was granted, but because plaintiffs had been granted leave to file a first amended Federal complaint, that order was not made appealable. On February 23, 1978, defendants' motion to dismiss plaintiffs' first amended Federal complaint was granted, and on April 4, 1978, plaintiffs' motion to vacate both the adverse summary judgment and the dismissal of their Federal complaint was denied.

On May 2, 1978, plaintiffs filed their notice of appeal from the orders entered on February 23 and April 4 of that year.

We have carefully considered the various counts of plaintiffs' complaint. Because of their length and sweeping terms, however, it would unduly lengthen this opinion to undertake a full exposition of them. The theories on which they are based are expostulated in plaintiffs' arguments on appeal. Plaintiffs' first two contentions on appeal are that sections 97 and 116 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, pars. 578, 597), permit unconstitutional delegations of legislative powers. Each of these provisions grants authority to assessment officials to revise assessments as shall appear to them "just." Plaintiffs also contend that section 194 of the same act (Ill. Rev. Stat. 1977, ch. 120, par. 675) is unconstitutional as applied because in order to obtain relief thereunder it is necessary to show fraud, so that taxpayers whose property is overassessed but who cannot prove fraud are denied equal protection. Four of plaintiffs' contentions relate to allegedly improper assessment practices. They assert that defendants should have, but did not, assess their property at a fixed percentage of its fair market value; that the board of appeals improperly considered budgetary needs of police and fire departments in reviewing the assessment of plaintiffs' property; that the fair cash value of the subject property was blatantly disregarded; and that defendants improperly applied a rule-of-thumb property valuation, which used only a gross rent multiple and did not allow for building operation expenses.

Plaintiffs also maintain that the hearings they were granted on this complaint for revision of their assessment were so unfair as to deny them their statutory and constitutional rights to a hearing, thereby rendering invalid the assessment of the subject property. Plaintiffs also contend that a prior hearing on their complaint before deputy assessor Patrick Doody was unfair and insufficient.

Plaintiffs' last three points are directed to adverse rulings in the circuit court. They assert that the facts were construed against them when the court granted defendants' motion for summary judgment, and that the

court denied them equal protection in refusing them the remedy they sought. Their final argument amplifies the latter point in insisting that plaintiffs should not have been compelled to pursue the remedy provided by statute (Ill. Rev. Stat. 1977, ch. 120, pars. 675, 716 and 751) to attack the assessment of their property because such a procedure would require them to waive the defects of which they complain: that the assessment was unlawful because it was arrived at in violation of mandatory and jurisdictional requirements, particularly the requirement of a fair hearing.

■■ The threshold issue, raised by defendants, is whether plaintiffs' present attack on the 1974 assessment of their property is a collateral action barred by either public policy or by the doctrine of *res judicata* pursuant to the annual judgment and order of sale entered on December 5, 1974, with respect to this assessment of plaintiffs' property. The history of Illinois law regarding collateral attacks on assessments of real property was explicated in *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 106-08, 306 N.E.2d 299. There, the supreme court observed that, prior to 1933, taxpayers could obtain no refund of taxes paid free of duress, so that challenges to taxes were made in the courts without prior payment of the disputed sums, a situation that resulted in impairment of tax collection and of the functions of government. Amendments to sections 162 and 191 of the Revenue Act authorized payments under protest of the tax challenged and required such prior payment as a condition precedent to filing objections to the county collector's application for judgment. Under this procedure, a taxpayer could obtain a judicial determination of the validity of a tax, or its underlying assessment, and if successful obtain a refund of any excess amounts paid. Subsequently the courts have held that, except where the tax in question is unauthorized by law or levied on exempt property, no relief from allegedly improper taxation may be obtained except by pursuing the statutory remedy. A further exception is recognized where the taxpayer can establish that the tax is constructively or actually fraudulent and that the statutory remedy is inadequate.

■■ The exclusivity of the statutory remedy of paying the tax and filing objections to the collector's application for judgment was again emphasized in *Chicago Sheraton Corp. v. Zaban* (1978), 71 Ill. 2d 85, 373 N.E.2d 1318. There a taxpayer's attempt to maintain a separate action to recover damages under section 323 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 804), which subjects certain assessment officials to liability for double damages caused by their refusal or knowing neglect to perform their duty, was held barred by the taxpayer's failure to file objections under the statutory remedy. The supreme court reasoned that since the taxpayer would be required to prove an overassessment of his property in order to prevail under section 323, permitting a separate action for damages under section 323 where no objection had been filed

would provide a means of evading the statutory remedy and give the taxpayer a second chance to litigate an issue that ought to have been litigated by pursuing the statutory remedy. In the present case, plaintiffs proceeded under section 322, which provides damages, but not double damages; nevertheless, *Sheraton* is clearly controlling because permitting a separate action under section 322 would have the same effect as permitting a separate action under section 323.

Plaintiffs argue that their action falls within an exception to the general rule established by these cases barring collateral actions where a taxpayer has not pursued the statutory remedy, in that the tax here in question was "unauthorized by law." This conclusion is based upon the theory that the statutes pursuant to which it was imposed are unconstitutional, and the hearings accorded plaintiffs were a sham. That exception does not apply to these facts.

■■ ■ Plaintiffs' attempt to avoid the effect of their failure to pursue the statutory remedy for overassessment by challenging the constitutionality of assessment statutes must be rejected for two reasons, First, this issue, like the question of the amount of assessment of their property, is one that could have and therefore ought to have been raised in an objection proceeding; the judgment entered on the collector's application therefore must be deemed to act as a bar to further litigation. (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 324, 312 N.E.2d 252.) Second, the validity of that judgment, and therefore of its operation as a bar, does not depend upon the lawfulness of the assessment. As stated in *First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 436, 202 N.E.2d 26, the trial court had *in rem* jurisdiction of the property and the power to enter judgment against it, so that "[w]hether the assessment was erroneous or illegal, the trial court had the jurisdiction to determine the validity of the assessment, and that determination, no matter how erroneous, is conclusive upon the parties after 30 days, unless grounds exist for a petition under section 72 of the Civil Practice Act."

■■ Plaintiffs assert that they are entitled to avoid the bar of that judgment by virtue of *Pennoyer v. Neff* (1878), 95 U.S. 714, 24 L. Ed. 565, based upon the notion that *Pennoyer* deprives void judgments of *res judicata* effect; however, *Pennoyer* holds only that judgments entered by courts lacking jurisdiction are void and without *res judicata* effect. The circuit court in the present case had *in rem* jurisdiction to enter judgment on the collector's application with respect to plaintiffs' property. (See, *e.g.*, *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 35, 344 N.E.2d 468.) That judgment therefore stands as *res judicata* in bar of plaintiffs' present action.

■■ Nor does the allegedly defective hearing before Commissioners Zaban and Semrow evoke the exception. Assuming *arguendo* such

defects exist, inasmuch as they are essentially procedural irregularities, they do not render the assessment one which is "unauthorized by law" for the purpose of exempting taxpayers from the requirement that they pursue the statutory remedy of filing objections to the collector's application. *Inolex Corp. v. Rosewell* (1978), 72 Ill. 2d 198, 380 N.E.2d 775; *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 548-49, 343 N.E.2d 507.

■■ In the present case, plaintiffs do not contend in their complaint for revision of their assessment that they did not receive notice, nor do they deny that hearings were held. Instead, they claim that those hearings were so unfair and in such flagrant disregard of their evidence as to amount to no hearing at all. The due process requirement of a hearing, however, means only the right to be heard at some time before the liability to pay the tax becomes conclusive, and not at any particular stage. (*Chicago Sheraton Corp. v. Zaban* (1978), 71 Ill. 2d 85, 90-91, 373 N.E.2d 1318; *Dietman v. Hunter* (1955), 5 Ill. 2d 486, 488-89, 126 N.E.2d 22.) Plaintiffs are not complaining of a failure to provide them with a hearing at the time the assessment originally was made. Moreover, the judgment and order of sale entered upon the collector's application, which included plaintiffs' property, recited that plaintiffs had been given notice of that proceeding, so that had plaintiffs so chosen, they could have obtained a hearing at that stage of the tax collection process. (Ill. Rev. Stat. 1977, ch. 120, par. 716.) Accordingly, accepting hypothetically plaintiffs' argument that the hearings on their complaint for revision were defective, it would not follow that they were denied constitutional due process, because hearings at two other stages of the assessment process were available to them.

■■ It is true, as plaintiffs point out, that a statutory provision mentions the holding of a hearing on complaints phrased in mandatory language. That provision, section 97 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 578), provides in pertinent part:

> "* * * the county assessor shall have authority annually to revise the assessment books each year and correct the same as shall appear to him to be just and on complaint in writing in proper form by any taxpayer, and after affording such taxpayer an opportunity to be heard thereon, he shall do so at any time, until the time that the assessment is verified."

This language creates a mandatory condition for lawful exercise of the authority to revise assessments; however, no revision occurred here. Section 97 does not void assessments previously made if no hearing is held, but only revisions made without hearing. None of the decisions relied on by plaintiffs suggest a contrary result.

■■ All the issues raised in this appeal by plaintiffs could have been raised by way of objection to the collector's application, the circuit court having

had jurisdiction to hear all justiciable matters. (See, *e.g., La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 324, 312 N.E.2d 252; *Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 729, 327 N.E.2d 427.) Because plaintiffs' situation is not one recognized as creating an exception to the general rule that collateral attacks on assessments are barred, all must be regarded as conclusively and adversely adjudicated by the judgment on the collector's application. By failing to object to that application, of which they were given notice, plaintiffs relinquished their opportunity for a hearing on the merits of these issues.

■■ Plaintiffs' points on appeal do not sustain their position irrespective of our *res judicata* finding. As to the contention that sections 97 and 116 of the Revenue Act unconstitutionally delegate legislative power because they permit officials to revise assessments as shall appear "just," we find that when the term is considered in conjunction with other constitutional and statutory standards relating to assessments, the asserted constitutional infirmity is dissipated. These standards begin with article IX, section 4(a) of the 1970 Illinois Constitution, which provides for taxes to be levied uniformly by valuation ascertained as the General Assembly shall provide by law, except that Cook County may classify property, as provided in section (b). Cook County has adopted such a classification ordinance (J. Proceed. Board of Commissioners of Cook County, Nov. 19, 1973, at 5162-63), which requires assessments to be based upon a percentage of market value, defined as the price property "* * * would bring at a fair, voluntary sale," a standard which has long been recognized as valid. (*People ex rel. Rhodes v. Turk* (1945), 391 Ill. 424, 427, 63 N.E.2d 513.) Section 20 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 501), provides that property be given a valuation based on its fair cash value at a fair, voluntary sale. Accordingly, the language authorizing revisions of assessments as shall appear "just" contemplates making adjustments which are in harmony with the requirements of uniformity and relation to fair cash value of property within the class of property.

Plaintiffs next contend that section 194 of the Act violates due process in that only those persons whose property is so grossly overassessed that the assessment is constructively fraudulent or fraudulent are given a remedy under it. The statute itself does not so provide, however, and no decisional authority has been cited or found indicating that remedies under section 194 are so restricted. Section 194 directs the court to "hear and determine the matter according to the right of the case and enter judgment for any part of the taxes, or order a refund of any part of the taxes, so paid under protest." Ill. Rev. Stat. 1977, ch. 120, par. 675.

Plaintiffs complain of the manner in which the amount of the assessment of their property was derived. They allege that proper factors were ignored and improper factors taken into account, in that defendants

used a rule-of-thumb based on the property's income without taking into account its operating expenses, improperly considered budgetary needs of government agencies, and disregarded evidence of the property's market value. The hearing complained of dealt not with the assessment of their property, but with their complaint for revision of that assessment. Accordingly, the significance of the hearings on plaintiffs' complaint as evidence of how the assessment was made is incidental. Certain statements made by Commissioners Zaban and Semrow, of which plaintiffs complain, do not establish error. The comment made by Commissioner Zaban regarding salaries of police and firemen does not amount to a statement that plaintiffs' property's assessment was affected by this consideration in any direct fashion. Likewise, his statement that the assessment was set at $45,000 "for tax purposes" is ambiguous at best. Both statements take notice of the ultimate function of property assessments as a basis for levying taxes to fund governmental activity, and a general concern that property not be underassessed lest inadequate revenue be generated; neither separately nor together do they establish that assessments were calculated on the basis of budgetary needs rather than value of the property. The remark made by Commissioner Semrow to "[f]orget that actual cash value stuff," does, in isolation, suggest a possible disregard for the proper standard for valuation, but it was made after plaintiff Doss and his attorney insisted that the commissioners accept their evidence regarding an appraisal of the property and the sale of a half-interest in it. In that context, the remark may well have been an unfortunately worded way of expressing distrust of the type of evidence offered as failing to meet the "fair, voluntary sale" standard, notwithstanding its supposedly direct nature.

■■ Plaintiffs describe a system, which they call a rule-of-thumb used by assessment officials in Cook County for setting assessment levels that relies on income and expenses from operation of the property. Plaintiffs allege that such a system ignores the fair market value of property, and in any event fails to adequately take into account their expenses in operating their property. It is recognized, however, that determination of fair market value may be accomplished in a number of ways, as noted in *People ex rel. Toman v. Pickard* (1941), 377 Ill. 610, 37 N.E.2d 330.[1] Obviously, the value of land has some relation to its income and expenses. Equally obvious is the fact that a single appraisal is not inevitably reliable. The sale price of property does not necessarily establish its value without further information on the relationship of the buyer and seller and other

---

[1] Although *Pickard* contemplates "fair cash value," that term has been interpreted synonymously with "fair market value" in *People ex rel. Frantz v. M. D. B. K. W., Inc.* (1966), 36 Ill. 2d 209, 221 N.E.2d 650, and *People ex rel. Korzen v. American Airlines, Inc.* (1968), 39 Ill. 2d 11, 18, 233 N.E.2d 568.

circumstances. Conversely, the use of some kind of formula based on income of property, while indirect in nature, would not unavoidably fail to reflect fair market value. Whether the particular formula applied to plaintiffs' property produced a proper figure cannot be determined from the facts asserted by plaintiffs. For the purpose of discussion, assuming the figure arrived at was incorrect, such error would constitute a mere mistake and would not render the assessment one "unauthorized by law." *Mid-Continental Realty Corp. v. Korzen* (1976), 40 Ill. App. 3d 133, 139, 351 N.E.2d 376.

As reflected in their amended Federal complaint in the circuit court, plaintiffs claim that their civil rights were violated by rulings of the circuit court. They argue first that, in granting defendants' motion for summary judgment, the circuit court discriminated against plaintiffs by construing the facts against them and denied them a fair hearing. The only fact of relevance to the summary judgment, however, was the entry of judgment on the collector's application; this fact was not disputed. Regarding the hearing plaintiffs desired, as previously stated, such a hearing could have and should have been obtained during the proceedings on the collector's application.

■■ Plaintiffs next contend that the circuit court discriminated against them by refusing to give them the benefit of a rule of law the validity of which was acknowledged by the circuit court, namely, that taxpayers are not confined to the statutory remedy of the Revenue Act when they are objecting to a tax unauthorized in law. That rule is clearly valid, but is not applicable merely because plaintiffs allege that the tax in question was unauthorized. As stated in the preceding analysis, the defects in the assessment process alleged by plaintiffs did not render the tax involved unauthorized. (*Inolex Corp. v. Rosewell*; *North Pier Terminal Co. v. Tully*.) Moreover, plaintiffs have mischaracterized the circuit court's position. The court indicated that, if the tax in question were unauthorized, plaintiffs would not be confined to the statutory remedy, asserting that plaintiffs were not claiming the tax was unauthorized. Plaintiffs countered that they were indeed contending that the tax was unauthorized, but the court nevertheless refused to grant them a new hearing. To suggest that the court had committed itself to granting a collateral remedy to plaintiffs based merely on what they have alleged is unsupportable.

Finally, plaintiffs contend that the principle of exclusivity of the statutory remedy as applied by the circuit court unconstitutionally required them to waive the very defects of which they complained, particularly the failure of the assessment officials to give them a fair hearing, which they interpret as a mandatory and jurisdictional requirement under the statute and a requirement of due process under the

Federal and Illinois constitutions. This argument is essentially a repetition of other points already discussed; it seeks to exempt plaintiffs from compliance with the statutory remedy because they object to it. Had plaintiffs followed the statutory remedy, they could have raised all their objections during the proceedings on the collector's application, and could thereby have preserved those issues for review. Instead, plaintiffs elected to forego the procedure specified by statute, thereby allowing these issues to be barred by the judgment entered on the collector's application.

For the foregoing reasons, the judgments of the circuit court must be affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.