*In re* APPLICATION OF COUNTY TREASURER.—(TREASURER OF COOK COUNTY, Assessor-Appellee, *v.* CHICAGO TITLE & TRUST COMPANY, Trustee, Petitioner-Appellant.)

First District (3rd Division)    No. 77-905

Opinion filed September 27, 1978.—Rehearing denied November 1, 1978.

SIMON, J., dissenting.

Arvey, Hodes, Costello & Burman, of Chicago (William J. Costello, Eugene L. Griffin and Robert M. Sarnoff, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Michael Baccash, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

On January 23, 1975, what is entitled as an Objection 1 protesting the 1967 assessment and tax of real estate belonging to the petitioner, was presented to the circuit court of Cook County by the State's Attorney. Upon the State's Attorney's recommendation, the court denied the Objection 1 protest. On January 20, 1977, petitioner filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) requesting that it be allowed to intervene and asking that the order of January 23, 1975, denying the Objection 1 be vacated. On April 18, 1977, the trial court denied the section 72 petition.

The property in question is owned in trust by petitioner for the benefit of the Society of the Divine Word, a religious order. The property was improved with a two-story brick building containing seven stores and 18 apartments. On December 20, 1966, a fire did enormous damage to the building. The building was uninhabitable and remained so until September 1, 1967. At the end of 1967 only part of the premises was reoccupied. The vacancies resulted in a gross income for 1967 of 88% less than that earned in the previous year. Petitioner realized a net loss of nearly $11,000.

In 1967 petitioner, through counsel, appeared before the assessor to present evidence as to the fire and condition of the building. Petitioner was informed that an assessor's employee would examine the premises and that, if the facts were verified, the assessment for the improvements would be cancelled. The subject property was again assessed for 1967, and an assessor's employee informed petitioner that, through a mistake, the assessment had not been cancelled. The employee suggested that petitioner file a complaint with the Board of Tax Appeals of Cook County to correct the assessment. Petitioner filed such a complaint, but the Board of Appeals did not correct the assessment. As a result, petitioner's 1967 tax bill was not reduced.

After petitioner received the tax bill, the assessor's office agreed to include the property in its 1967 Objection 1. The Objection 1 was presented to the court seven years later. The trial court dismissed the Objection 1 protest on the subject premises because petitioner had filed a complaint with the Board of Appeals. After notification that the Objection

protest had been denied, the petitioner requested the State's Attorney to appeal from the dismissal order, but the State's Attorney refused. Almost two years after the denial of the Objection 1, petitioner sought leave to intervene and to vacate the order dismissing the objection. Petitioner appeals from the trial court's denial of that petition.

Petitioner contends that because its assessment and tax were included in the subject of the Objection 1 filed by the assessor, it had the right to intervene in the proceeding. Petitioner also contends that it was denied its constitutional right to equal protection of the law when the trial court denied the Objection 1 as to its property on the ground that petitioner's filing a complaint with the Board of Appeals precluded any action by the trial court.

In order to consider the issues, it is essential that the Objection 1 procedure be explained. In *First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 202 N.E.2d 26, our supreme court gave a succinct exposition of that procedure. At pages 434-35, the court stated:

"An 'Objection 1' is a device used in Cook County tax collection machinery. It is an objection filed by the assessor to the application of the county treasurer for judgment and sale against lots and lands which are delinquent in the payment of taxes, and number '1' is reserved by the clerk of the county court each year for such objection. It is divided into subnumbers which annually number about two thousand. A parcel number is assigned by the assessor for each lot or unit of land to which an 'Objection 1' is filed. Such objections are not filed all at one time but may be filed on several occasions and over a period of time when the assessor determines that he has made an error in his assessment—such as assessing a vacant lot for an improvement when in fact there is no improvement, assessing a lot as improved when in fact the improvement had been destroyed by fire, *etc.* When an 'Objection 1' is filed with the clerk of the county court, it is posted on the county treasurer's warrant books and upon the Tax Judgment Sale Redemption and Forfeiture records. The posting of an 'Objection 1' is made regardless of whether the tax has been paid or not. It is the only objection in Cook County which the clerks of the treasurer's office will post without payment of the tax in full, as a condition precedent to the posting. If an 'Objection 1' is posted in either the treasurer's warrant book or in the Tax Judgment Sale Redemption and Forfeiture record before the date of the sale of the parcel against which it is posted, the parcel will not be offered for sale by the deputy treasurer conducting the sale. It is used as an accommodation to the property owners where real estate has been overassessed through errors in the assessor's office."

Thus an Objection 1 procedure is a device or an accommodation which is unique to Cook County and which is unsupported by the statute. As we shall see below, it is not intended as a substitute for the statutorily mandated challenge of an excessive tax.

The proper method for challenging a tax as being excessive is set out in the Revenue Act. (Ill. Rev. Stat. 1967, ch. 120, par. 592.1 *et seq.*, pars. 675 and 716.) The taxpayer must first exhaust his administrative remedies by filing a complaint with the Board of Appeals. If that complaint is denied, the taxpayer must pay the tax under protest and file an objection at the collector's annual application for judgment. (*People ex rel. Korzen v. Fulton Market Cold Storage Co.* (1976), 62 Ill. 2d 443, 343 N.E.2d 450, *cert. denied* (1976), 429 U.S. 833, 50 L. Ed. 2d 98, 97 S. Ct. 97.) In such an adversary proceeding, the taxpayer challenges the assessment and tax on his property.

In the present case, petitioner took no further action after the Board of Appeals denied its complaint. Instead, petitioner elected to rely upon the granting of the Objection 1 protest pertaining to its property which had been filed by the assessor. In *First Lien Co. v. Markle*, the court used pertinent language at page 439:

> "It should also be noted that defendants had no right to rely on the assessor filing a so-called 'Objection I'. The Cook County 'Objection I' practice is unauthorized by statute and constitutes a convenient administrative device for the correction of the assessor's errors without cost or hardship to the individual taxpayer. Its customary use cannot excuse a taxpayer from protecting his rights according to statutory procedures, and certainly no such objection can serve to invalidate a judgment after its rendition."

■■ We believe the trial court correctly denied petitioner's belated request to intervene in the Objection 1 procedure.Through its inaction petitioner waived its statutory right to challenge the assessment and tax in an adversary proceeding. In *First Lien Co.* the court specifically stated that a taxpayer may not rely upon an Objection 1 procedure for correction of alleged errors. Petitioner does not challenge the adequacy of its statutory remedy, but merely asserts an additional right and even suggests that it was entitled to vigorous representation of its interests by the State's Attorney at the Objection 1 hearing. We believe, rather, that the petitioner was incorrect in foregoing its clear statutory remedy in lieu of the "so-called Objection 1," a device not authorized by statute. The trial court correctly ruled that because the Objection 1 is not recognized by statute, petitioner does not have the right to intervene under section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1)).

■■ We also hold that petitioner's right to equal protection under the laws

was not violated by the trial court's denial of the Objection 1 on the ground that petitioner had filed a complaint with the Board of Appeals. Petitioner's argument is based upon its entitlement to "vigorous representation" by the State's Attorney during the hearing on the Objection 1 and its contention that the trial court was without precedent to deny the Objection 1 on such grounds.

The State's Attorney's refusal to recommend approval of a claim which had been denied by a statutorily authorized body, the Board of Appeals, cannot be deemed improper representation. Such informal accommodations or devices as Objection 1 should be proscribed in the courts. The beneficiary of the outcome of an Objection 1 hearing is the taxpayer. The nature of the procedure, however, is such that no taxpayer is accorded the right to have his objection presented in any particular manner by the State's Attorney. The taxpayer's right is set out clearly by statute and is to be exercised by the taxpayer in an objection to the collector's annual application for judgment. The trial court cannot be deemed in error for refusing to interfere with the Board of Appeals' denial of relief in this case, especially when such action would take place in the context of a procedure unauthorized by statute.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JIGANTI, P. J., concurs.

Mr. JUSTICE SIMON, dissenting:
I would reverse the circuit court's judgment, allow the petitioner to intervene for the purpose of pursuing the Objection 1 protest insofar as it relates to his property, and grant the section 72 petition (Ill. Rev. Stat. 1975, ch. 110, par. 72) to vacate the order dismissing that part of the Objection 1 protest. I reach this conclusion both because *First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 202 N.E.2d 26, the primary case relied on by the majority, is inapposite here, and for broader reasons of public policy relating to the relationship between taxpayers and the sovereign.

*First Lien Co. v. Markle* presents a factual situation different from this case. The assessor in *First Lien* delayed filing his Objection 1 until approximately 29 months after the overassessed property had been sold at a tax sale ordered subsequent to a judgment for delinquent taxes. And the court's desire to protect the subsequent innocent purchaser at that sale appears to have been the reason for the *First Lien* language that a taxpayer may not rely on an Objection 1 procedure to correct alleged errors in assessments. As the court commented:

"\* \* \* [I]t is \* \* \* undisputed that no such objection was presented to the trial court prior to the judgment and order of sale of May 27, 1960; no appeal was taken therefrom; and no petition under section 72 of the Civil Practice Act was filed within two years of the entry of said order.

\* \* \*

We have examined the cases cited by defendants to the effect that notice to a taxpayer is a condition precedent to an increase in an assessment. With one exception, these cases involve litigation between the taxpayer and the collector and do not involve the rights of a tax purchaser who purchased in reliance on a judgment and order of sale regular on its face.\* \* \* " 31 Ill. 2d 431, 436-38.

Nothing in the record before us indicates either that any tax sale took place prior to the assessor's filing the Objection 1, or that an innocent purchaser could be prejudiced by a decision favoring the taxpayer.

An additional basis for distinguishing *First Lien* is that there the taxpayer relied on the assessor's mere promise to file an Objection 1, while here, the taxpayer placed his reliance on an Objection 1 protest which the assessor actually had filed. Although rejecting a taxpayer's claim because he mistakenly relied on a governmental official's mere promise to act may be a sensible result, rejecting such a claim after the action in fact was taken is palpably unjust: the taxpayer should not be placed in the difficult position of having to speculate on whether governmental actions are or are not valid, and then be penalized because he happens to guess incorrectly. As a member of the public, the taxpayer was entitled to rely on the assessor's action, as well as on a subsequent adequate representation of his interests by the State's Attorney.

The collector in his brief states that the "State's Attorney is representing not the petitioner, but rather the assessor." Precisely because the assessor has admitted the property owner was overtaxed, the State's Attorney should be seeking to correct his client's acknowledged error, instead of, as he does here, urging the judicial system to burden the taxpayer by perpetuating the error. The taxpayer should be protected from inadequate representation by a public official who voluntarily assumes the responsibility of protecting him; otherwise, with friends acting as the assessor's and State's Attorney's office did here, he will not, in the words of an often-repeated observation, be in need of enemies. Accordingly, *First Lien* is not a useful precedent in this case.

My second ground for disagreement, however, is a more general concern with the rights of the often-beleaguered taxpayer. And this is a concern which seeks to avoid the perpetuation of individual injustice

and collective dissatisfaction among taxpayers which often result from a strict application of the statutory requirements. Here, the assessor acknowledged that the property in question had been destroyed by fire, and that his assessment figure was erroneous. Under these circumstances, if any procedural device is available for preserving the taxpayer's right to contest the tax assessment, notwithstanding his failure to pursue his statutory remedy, he should be given the benefit of the doubt and permitted to proceed with his protest against the admittedly improper assessment. Specifically, in this case the Objection 1 that the assessor filed in the circuit court before there was any tax sale, and which the taxpayer relied on, can be regarded as the procedural vehicle to preserve the taxpayer's complaint. A decision giving the Objection 1 that status would not question an official's judgment as to whether the valuation was unreasonably high, or encourage tax strikes. It merely would provide an opportunity to correct an error which the assessor acknowledged and the Board of Appeals—whose statutory duty was to correct that error—failed to remedy.

Our supreme court has not construed the statutory remedy to be so rigid and inflexible that only those who conform to it may seek relief from assessors' admitted errors. In fact, the entire body of law which permits the taxpayer to seek equitable relief (see, e.g., *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299) is in a sense a departure from a need for strict compliance with the requirements of the statutory legal remedy. Therefore, if the assessor's filing of the Objection 1 before a tax sale is construed as preserving the taxpayer's complaint even though he has not paid the tax in full, the taxpayer at least will be able to get his foot in the door and protest a tax everyone concerned agrees is too high.

Otherwise, to insist that the property owner pay such a tax could only increase the dissatisfaction taxpayers feel—in many instances justifiably— toward the taxing authorities. When the sovereign leans so heavily on property owners for tax collections, the taxpayer deserves every consideration he can reasonably be given, especially in those instances when taxing officials concede in documents filed in the circuit court on their behalf that they have imposed an improper levy on a taxpayer. The sovereign's action in making such a concession to the taxpayer here would not be against public policy and will not undermine future tax collections. I would permit the petitioner to take advantage of the assessor's Objection 1 filed on his behalf.