*In re* APPLICATION OF COOK COUNTY COLLECTOR.—(COOK COUNTY COLLECTOR, Plaintiff-Appellee, *v.* CHELSEA HOUSE, Defendant-Appellant.)

First District (2nd Division)    No. 79-1893

Opinion filed December 22, 1980.—Modified on denial of rehearing December 22, 1980.

Lee J. Schwartz and James C. Spangler, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Robert S. Vihon, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Two parcels of land located at 920 W. Wilson Avenue in Chicago, owned by defendant Chelsea House, a retirement home for the aged, were taxed by the assessor of Cook County in 1968 at a substantial increase over assessments for prior and subsequent years.[1] The increase was claimed by the taxpayer to have been significant, excessive and groundless and it filed complaints before the Board of Appeals for the 1968 calendar year assessment. After the tax bills were issued reflecting the increases, the assessor conceded error and sought to have the assessments corrected by including them within his "Objection 1" petition, which would have deleted the subject property from the collector's annual application for judgment and order of sale filed in the circuit court of Cook County for the year 1968. Following the assessor's advice that he would attempt to have the 1968 assessment ameliorated in this manner, Chelsea House abstained from pursuing relief on its Board of Appeals' complaints and filed no objection of its own to the collector's application.

---

[1] In 1968 the equalized assessed valuations were $450,356 and $510,676 for the two parcels, whereas in the eight years previous and subsequent to 1968 the valuations had been $170,294 and $194,857 respectively.

The Board of Appeals' complaints were ultimately denied, [2] although no assessment review hearing on the merits was actually held.

The Objection 1 petition was presented to the trial court and was denied on August 3, 1977, with respect to the Chelsea House property, apparently for the reason that granting it would effectively overrule the Board of Appeals' denial. The State's attorney, who had represented the assessor in his Objection 1 application, declined to appeal the denial. Within 30 days of the circuit court order, Chelsea House filed a petition for leave to intervene supported by affidavits and briefs and sought to vacate the August 3, 1977, order. The petition was opposed by the State's attorney, who now resisted the granting of relief on behalf of the collector which his other client, the assessor, directed him to initiate and pursue. Following oral argument before the trial court, the petition for leave to intervene was denied on August 9, 1979, the trial court relying primarily upon the decision of the appellate court in *In re Application of County Treasurer* (1978), 65 Ill. App. 3d 307, 382 N.E.2d 311 (hereinafter "*CT&T*"). By this appeal, Chelsea House seeks to have that order reversed and to be permitted to intervene upon remand for further consideration of this cause on its merits.

■■ The principal issue presented is whether the trial court properly denied the petition for leave to intervene because the Objection 1 procedure is not authorized by statute and because Chelsea House had a separate statutory remedy by which it could have challenged the assessment and resulting tax but elected not to do so. For the reasons which follow, we reverse and remand with directions.

The Objection 1 device was developed by the assessor in Cook County as an accommodation to property owners whose real estate had been overassessed through errors by the assessor. It was a procedure without statutory authority but pursued annually and sanctioned by the trial courts, which granted relief to some taxpayers and denied relief to others. The process could be analogized to a confession of error in the assessments. Although the Objection 1 petition was an action taken by the administrative agency, its determination was made by the court and entered as a judgment within the lawsuit filed by the collector in his application for judgment and sale. One of the apparent advantages to the aggrieved taxpayer in having his property included within an Objection 1 petition was that he need not have paid the tax assessed, albeit under protest, in order to benefit from the corrective proceedings as he would have had to do had he elected to proceed by way of the Board of Appeals

---

[2] Chelsea House asserts, concurred in by the assessor, that the denial was made with a record card notation "no change—no appearance," however, neither the complaints nor the Board's denial orders were made part of the record on appeal. The relevant dates respecting the filing of the complaints and their denial have not been supplied by the parties.

remedy set forth in sections 194 and 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120, pars. 675, 716).[3] In *First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 434-35, 202 N.E.2d 26, the supreme court further explicated the operation of the Objection 1 procedure.[4]

Chelsea House maintains that because the lawsuit filed by the collector in his application for judgment and sale involved its property, it should have been permitted to intervene under sections 26.1 (1)(b), (c), and (2)(b) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 26.1(1)(b), (c), (2)(b)), either as a matter of law or permissively, because its property would be plainly affected adversely by the trial court's denial of the Objection. It argues that section 26.1 was intended to allow for the expeditious consolidation of claims and defenses in minimization of duplication in legal proceedings. Further, it contends that the statutes pertaining to intervention are to be liberally construed so as to relax the requirement that the intervenor have a direct interest in the suit, citing *In re Application of Du Page County Collector* (1978), 63 Ill. App. 3d 8, 379 N.E.2d 943; *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 134 N.E.2d 793; *Mensik v. Smith* (1960), 18 Ill. 2d 572, 166 N.E.2d 265, the latter two cases having permitted intervention after judgment as was sought in the present case.

The collector counters, however, that even if Chelsea House was so situated as to be adversely affected, in the context of facts similar to those presented to the appellate court in the *CT&T* case, it should not be permitted to intervene. In *CT&T*, it was held that "* * * because the Objection 1 is not recognized by statute, petitioner does not have the right

---

[3] Chelsea House represents that the amount of money required to be paid would constitute "a crushing economic burden." The differences in the incorrect equalized assessed valuation for each parcel were over 2½ times their correct valuations. See footnote 1.

[4] "An 'Objection 1' is a device used in Cook County tax collection machinery. It is an objection filed by the assessor to the application of the county treasurer for judgment and sale against lots and lands which are delinquent in the payment of taxes, and number '1' is reserved by the clerk of the county court each year for such objection. It is divided into subnumbers which annually number about two thousand. A parcel number is assigned by the assessor for each lot or unit of land to which an 'Objection 1' is filed. Such objections are not filed all at one time but may be filed on several occasions and over a period of time when the assessor determines that he has made an error in his assessment—such as assessing a vacant lot for an improvement when in fact there is no improvement, assessing a lot as improved when in fact the improvement had been destroyed by fire, *etc.* When an 'Objection 1' is filed with the clerk of the county court, it is posted on the county treasurer's warrant books and upon the tax judgment sale redemption and forfeiture records. The posting of an 'Objection 1' is made regardless of whether the tax has been paid or not. It is the only objection in Cook County which the clerks of the treasurer's office will post without payment of the tax in full, as a condition precedent to the posting. If an 'Objection 1' is posted in either the treasurer's warrant book or in the tax judgment sale redemption and forfeiture record before the date of the sale of the parcel against which it is posted, the parcel will not be offered for sale by the deputy treasurer conducting the sale. It is used as an accommodation to the property owners where real estate has been overassessed through errors in the assessor's office."

to intervene under section 26.1 of the Civil Practice Act * * *." (65 Ill. App. 3d 307, 310.) CT&T took issue with an alleged overassessment of its property by filing a complaint with the Board of Appeals, which refused to reduce the assessment. The taxpayer took no further action with respect to paying the tax under protest or filing an objection to the collector's annual application for judgment pursuant to statutory procedures, electing instead to rely upon the assessor's Objection 1 petition. The appellate court in *CT&T* referred to language in *First Lien Co. v. Markle*, which noted that the taxpayer had no right to rely upon the assessor's filing of his Objection 1 because it was not authorized by statute; it was simply a convenient administrative device for the correction of the assessor's errors without cost or hardship to the individual taxpayer; and its use would not excuse the taxpayer from protecting his rights according to statutory procedures. The *CT&T* court went on to observe that the taxpayer had waived its statutory right to challenge the assessment and tax in an adversary proceeding, noting that it did not challenge the adequacy of its statutory remedy but was merely asserting an additional right. 65 Ill. App. 3d 307, 310.

This case presents a factual situation dissimilar to those prevailing in the above-cited cases. No dispute appears to exist here with respect to the essential fact: an erroneous assessment in the magnitude of more than 2½ times the correct valuation was made by the assessor with respect to two parcels of property (see footnote 1). The property owner here asserts the existence of error. The assessor concedes the error. The State's attorney not only does not deny that an error had been made but recommended that the Objection 1 be considered, unlike the *CT&T* case. Of substantial significance is the fact that the assessments in the eight years following 1968 have dropped essentially to what they had been in the eight years prior to 1968 (*Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 90, 322 N.E.2d 833). Also in contrast to *CT&T*, no ruling by the Board of Appeals has been made in contradiction of the assessor's acknowledged error; all concede that the Board did not hear the case on its merits, but denied relief on the basis of "no change—no appearance." The trial court here was not importuned to interfere with the Board of Appeals' denial of relief on its merits, as in *CT&T*; it was requested to hear the case on its merits for the first time in its long history. (*Cf. Chicago Title & Trust Co. v. Tully* (1979), 76 Ill. App. 3d 336, 342, 395 N.E.2d 42.) The trial court did not find an absence of assessment error; it simply declined to consider the matter. The taxpayer here does not assert the right to have the State's attorney represent it before the court, as was the situation in *CT&T*; it merely seeks to intervene so that it may pick up the proceedings where the State's attorney has chosen to drop them. No tax sale has been ordered, nor do any subsequent innocent purchasers' rights require protection as in *First Lien Co. v. Markle*. Moreover, unlike the taxpayers in *CT&T* and

*Markle,* Chelsea House did pay the correctly assessed taxes; only the allegedly exorbitant, confessedly incorrect tax has not been paid.

The collector also cites *Chicago Sheraton Corp. v. Zaban* (1978), 71 Ill. 2d 85, 373 N.E.2d 1318, *cert. denied* (1978), 439 U.S. 888, 58 L. Ed. 2d 233, 99 S. Ct. 242, as precedent here. In that case the taxpayer was denied participation in a certificate of error proceeding before the Board of Appeals, in which the Board refused to endorse the assessor's certificate of error after a hearing pursuant to section 123 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 604). The taxpayer filed an action in equity, claiming, in part, a constructively fraudulent assessment and tax, and that it had no adequate remedy at law. The supreme court held that the taxpayer was not authorized by statute to participate in the certificate of error proceedings but could obtain judicial review of the assessment by filing objections to the collector's application for judgment and order of sale (Ill. Rev. Stat. 1977, ch. 120, par. 675), which it did not do. No statutory authority exists with respect to a taxpayer's participation in the Objection 1 procedure; however, unlike *Zaban,* in the present case no hearing on the merits of the acknowledged error has been or will ever be held, which is why Chelsea House sought leave to intervene in the trial court. [5]

The status of the Objection 1 procedure, as one unauthorized by law, lacks judicial favor. Yet the procedure has been neither condemned nor deemed a *caput lupinum* in the law. It has been recognized by the assessor and, inferentially, by the circuit court as a tool which might promote the ends of justice, although one which heretofore has been exclusively utilized by the assessor rather than the taxpayer. The assessor in this case, through his counsel, the State's attorney, has declined to pursue the remedy he initiated in the collector's litigation in order to right the wrong which, through an error in his office, has been visited upon the taxpayer (see discussion in dissent, *CT&T,* 65 Ill. App. 3d 307, 311-13). As noted in that dissent (65 Ill. App. 3d 307, 313), the statutory remedies have not been considered so rigid and inflexible under all circumstances as to deny relief from the admitted errors of assessors, citing *Hoyne Savings & Loan Association v. Hare* and *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299. Significantly, section 26.1, the intervention statute, does not require a statutory basis exclusively in order to warrant relief; subsection (1)(c), upon which Chelsea House relies, requires only that an applicant be "\* \* \* so situated as to be adversely affected by a \* \* \* disposition of property \* \* \* subject to the control or disposition of the court \* \* \*." Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1)(c).

---

[5] Since the assessor has sought rectification of his errors exclusively through the certificate of error procedure since 1973, this case presents no "open sesame" for taxpayers' intervention in Objection 1 proceedings.

■■ The collector raises the absence of timeliness as a ground for denying intervention in this case. We find this argument to be without merit. The petition for leave to intervene was filed within 30 days after denial of the Objection 1 petition by the trial court. Since Chelsea House could not have predetermined the denial of that petition, nor the declination of the assessor to appeal from that order, no reason arose prior thereto for the taxpayer's intervention. Sufficient diligence appears to have been exercised by Chelsea House in filing the petition when it learned that no further proceedings would be initiated by the State's attorney. Equally without support is the collector's contention that the assessor could not overrule the Board of Appeals' denial of the complaints filed by Chelsea House, since the State's attorney conceded in 1977 in argument before the trial court: "In the area of no-change for want of appearance [before the Board of Appeals], I think it is the strongest case; it borders on no evidence; nobody appeared. And if the assessor found he was wrong, certainly if the evidence strongly justifies the reduction, it should be heard."

■■ Under the circumstances of this case, where all having knowledge appear to agree that an error has been made which may go uncorrected unnecessarily and unjustly, the interest of Chelsea House in pursuing a hearing on its merits which directly affects its property is sufficient under section 26.1 of the Civil Practice Act to permit intervention. The trial court's reluctance to allow intervention is entirely understandable in light of *CT&T*'s holding; however, because of the significantly distinguishing factors in this case, the decision must be reversed with directions to permit Chelsea House to intervene in the proceeding for the purpose of seeking vacatur of the order denying the Objection 1 judgment applying to its property, and securing a hearing on the merits of that objection.

Reversed and remanded with directions.

PERLIN, P. J., and STAMOS, J., concur.