SEYMOUR ABRAMS *et al.*, Plaintiffs-Appellants, v. MORRIS RAPOPORT, general partner of and d/b/a Lincoln Tower Condominiums, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 86—3161

Opinion filed November 30, 1987.

Max A. Abrams and Sidney Z. Karasik, both of Chicago, for appellants.

Novack & Macey, of Chicago (Eric N. Macey and Bruce Braverman, of counsel), for appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiffs Seymour Abrams, Bernard Baygood, Muriel Baygood, David Bernstein, Shirley Bernstein, Melvin Hayman and Pauline Weitzman are all residents and owners of condominium units on the sixth floor of Lincoln Towers, a six-story, Y-shaped building constructed by Morris Rapoport. Plaintiffs purchased their units at various times during 1978-79. Plaintiffs claimed that "unusual and vexatious" noises emanated directly from the roof area over their units and disturbed the quiet enjoyment of their property. The plaintiffs filed the instant suit against Morris Rapoport, individually and as the general partner of Lincoln Tower Condominiums, and Sim Construction Company, alleging a breach of the warranty of habitability implied in their condominium sales agreements or, in the alternative, a breach of the express terms of their sales agreements. The plaintiffs expressly waived their right to money damages, sought specific performance of their condominium sales contracts, and asked the trial court to direct a reconstruction of the roof/ceiling assembly by the defendants.

At trial, five of the seven plaintiffs offered testimony as to the sounds they heard in their units and the level of discomfort that it caused. One of the plaintiffs, Seymour Abrams, was permitted to play

a tape recording of the sounds he claimed were produced when there were gusty winds outside. Additionally, the plaintiffs introduced the testimony of two expert witnesses, John Stecich and Rex Selbe, and the evidence deposition of a third expert, Ralph Epstein, in support of their contentions. Structural engineers John Stecich and Rex Selbe made two visits to the Lincoln Tower Condominiums at plaintiffs' request. However, on each of their visits they limited their inspections to unit 603. Stecich testified that on the first visit he merely made a visual inspection but that he had personally heard the "unusual" wind noises. On the second visit, Stecich and Selbe examined the architectural drawings and found they called for an "angle" at the point where the roof assembly joins the masonry walls. But, upon investigation they found that no angle was present. Stecich then climbed into the area between the ceiling and the roof and performed deep knee bends to simulate the effects of a 30-mile-per-hour wind. Selbe placed a stethoscope over various locations where the bar joists met the metal "furring" strips and supported the ceiling, to determine the source of the noises. Stecich and Selbe testified that although they were unable to pinpoint the source, they were able to eliminate the sounds in one spot by untying some wires and placing a thin piece of plastic between the metal furring strips. On cross-examination, however, Stecich and Selbe acknowledged that the wire-tying method used by defendants was an acceptable construction practice.

In general, Stecich and Selbe could not find error in the materials used or the design of the assembly in the drawings. While Stecich did opine that the absence of the "angle" might have caused the noises, Selbe testified that the "mere absence of an angle did not necessarily mean that the attachment of the metal deck and the bar joists to the exterior masonry wall was not adequate." Moreover, neither Stecich nor Selbe could positively identify the source of the noises in the plaintiffs' unit or identify a method to cure the metal scraping noises in the ceiling/roof assembly.

The trial court, as stated above, also allowed the evidence deposition of Ralph Epstein, an architectural engineer employed by plaintiffs to inspect the ceiling/roof assembly, to be read into the record. In the deposition, Mr. Epstein related that he simulated the complained-of noises in the same manner as Stecich by jumping up and down on the roof deck. Epstein further stated in his deposition that he had observed improper construction practice in his investigation and stated that in his opinion the cause of the problem here was "the inadequacy of the connection of this corrugated deck, and the absence of the angle against the outsode [sic] wall combined, [which] created the situa-

tion whereby metal could slide against metal and create a noise similar to what the people on the top floor said they heard during a wind storm." However, Mr. Epstein noted that there also were other possible causes for the sound of metal scraping on metal.

The plaintiffs called defendant Morris Rapoport as an adverse witness, who acknowledged receiving complaints on windy days but stated that when he and his architect investigated they were unable to hear the noises. Rapoport further testified that he also consulted an architect and a structural engineer in an effort to determine the cause of the unit owners' complaints. At one point, Rapoport said he opened the roof area and placed stones as weights over the west end of the building to see if the complained-of noises would cease. Finally, he noted that the Lincoln Tower Condominium Association had also investigated the plaintiffs' complaints and, like Rapoport, could not find either the cause or the cure.

After the plaintiffs had presented their case in chief, the defendants moved for a directed verdict. On July 3, 1986, the trial court granted defendants' motion. The court found that the plaintiffs had failed to present a *prima facie* case for specific performance, breach of implied warranty of habitability, or breach of an express warranty of the condominium sales agreement. The trial court denied plaintiffs' motion to vacate and reconsider on October 17, 1986. Thereafter, plaintiffs filed a notice of appeal on November 12, 1986, and this appeal followed.

At the oral argument before this court, the plaintiffs waived their claim of a breach of express warranty, and thus, the sole remaining issue on appeal is whether the plaintiffs established a *prima facie* case of breach of an implied warranty of habitability under their condominium sales contracts that entitled them to specific performance, *i.e.*, here, reconstruction of the roof assembly. It is their contention that the roof assembly, although not constructed with defective materials, nevertheless created a breach of the implied warranty of habitability under their sales contracts because the roof assembly emitted "unusual" noises under windy conditions, creating a nuisance. Plaintiffs further assert that it was unnecessary to present decibel evidence to establish a *prima facie* case, and that in any event, since their experts' testimony concerning the roof noises was unimpeached and uncontradicted, this testimony alone entitled them to equitable relief, as a matter of law.

On the other hand, defendants contend that the plaintiffs failed to objectively demonstrate that their dwelling units were unreasonably defective, and hence, there was no evidence to support a finding of a

breach of the implied warranty of habitability in the contract. Moreover, the defendants argue that, even conceding *arguendo* that plaintiffs established a *prima facie* case, they did not demonstrate they were entitled to specific performance as a remedy. Defendants note that the extraordinary relief of specific performance which plaintiffs seek here is only available as a remedy where money damages are either inadequate or insufficient and where the requested performance consists of a singular, discrete act. (See *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773.) Such is not the case here, they assert, since there has been no showing that money damages are an inadequate or insufficient remedy and, in any event, the requested performance would require the court to become improperly involved in continuous supervision of any ordered reconstruction of the roof assembly.

■ A breach of the implied warranty of habitability was first recognized in Illinois in a landlord-tenant situation (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208) and has been extended to cover contracts for the sale of new homes (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154), for townhouses (*Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 410 N.E.2d 902), as well as condominiums (*Kelley v. Astor Investors, Inc.* (1985), 106 Ill. 2d 505, 478 N.E.2d 1346). To establish a *prima facie* case for breach of this warranty, a plaintiff must demonstrate that his dwelling suffers from a defect of a kind and nature which will prevent its use for the purpose of habitation. (See *Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 479 N.E.2d 915; *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154; *Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651; *Pugh v. Holmes* (1979), 486 Pa. 272, 405 A.2d 897.) The defect must, furthermore, be of such a "substantial nature" as to render the premises unfit for habitation in the eyes of a reasonable person and not merely those of the claimant. *Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 13-14, 479 N.E.2d 915, 920.

■ In reviewing the evidence, the trial judge here found that plaintiffs' vague assertions of "unusual" noises emanating from the roof assembly did not, under any circumstance, constitute a substantial defect necessary to survive a motion for a directed verdict under section 2—1110 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110; see *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) The testimony of plaintiff Abrams and the expert witnesses, even though uncontradicted, did not establish with reasonable certainty that each of the plaintiffs even heard the same noises, that the condominium units suffered from any defects, or that good build-

ing practices were not followed in constructing the plaintiffs' units. Further, the court noted that it could hardly find the plaintiffs' units "uninhabitable in the eyes of a reasonable person" (*Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 11, 479 N.E.2d 915, 920) when plaintiffs themselves stated that they were otherwise pleased with their units and had no desire to sell them or to move from them. We concur with the trial court's analysis, and accordingly, we hold the trial court properly found that the plaintiffs failed to establish a breach of an implied warranty of habitability in this case.

■■■ We further agree, as the defendants assert, that regardless of whether the plaintiffs did establish a breach of the implied warranty of habitability, they were not entitled to a remedy of specific performance. It is well settled that specific performance is an extraordinary remedy and will only be invoked where the plaintiff is without an adequate remedy at law and where it is feasible for the court to enforce such a remedy. (See *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773; *Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 327 N.E.2d 427.) Breach of the implied warranty of habitability claims are ordinarily treated as a standard breach of contract claim. The proper measure of damages in such cases is an award of money damages for the reasonable cost of correcting the defects or completing any necessary construction, or for any diminution in value attributable to the defect where reconstruction would result in economic waste. *Witty v. C. Casey Homes, Inc.* (1981), 102 Ill. App. 3d 619, 430 N.E.2d 191.

■■ Here, in their complaint, plaintiffs merely alleged a defect in the construction which, if it existed, could typically be remedied through the payment of the costs of any necessary repairs or reconstruction. Furthermore, the evidence that the plaintiffs introduced at the trial did not establish any basis for their request for specific performance. In fact, no witness could testify that any specific repairs or reconstruction were necessary to cure the alleged defect in the roof assembly. The evidence did not demonstrate what specific repairs were necessary to correct an identified condition, but rather, only established that some ambiguous repairs were necessary to correct the asserted condition. Consequently, any order of reconstruction entered by the court would be difficult, if not impossible, to reasonably enforce under these circumstances. Thus, the plaintiffs were not entitled to specific performance, since there was no indication that the legal remedy would be inadequate or insufficient, and if the court granted specific performance, it would necessarily have become involved in the continuous and difficult task of supervising compliance with its order.

■ It is well settled that a court will not grant specific performance of a repair contract where the nature of the work is unspecified and where continuous supervision of the order by the court will be necessary. (*Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 972-73, 326 N.E.2d 773, 778.) The plaintiffs specifically waived their claims for money damages, and therefore, no relief could be granted by the trial court. Hence, the trial court properly granted the defendants' motion for a directed verdict.

Accordingly, for all of the above-stated reasons, we find that the defendants were entitled to a directed verdict, as a matter of law, and that the trial court properly denied the plaintiffs' motion to vacate its judgment. The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and MANNING, JJ., concur.