NO. 4-10-0230          Filed 12/22/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| CC DISPOSAL, INC., a Corporation, | ) Appeal from |
|      Plaintiff-Appellee, | ) Circuit Court of |
|      v. | ) Macon County |
| VEOLIA ES VALLEY VIEW LANDFILL, INC., | ) No. 08MR565 |
| an Illinois Corporation, d/b/a MACON | ) |
| COUNTY LANDFILL, | ) Honorable |
|      Defendant-Appellant. | ) Thomas E. Little, |
| | ) Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Defendant, Veolia ES Valley View Landfill, Inc., appeals after a bench trial from the trial court's decision it materially breached its contract with plaintiff, CC Disposal, Inc., and rescinding that contract. Defendant argues the trial court erred in (1) finding the contract at issue required defendant to operate its landfill on Saturdays; (2) failing to consider whether plaintiff had an adequate remedy at law; and (3) finding defendant's breach was a material breach justifying rescission of the contract. We affirm.

I. BACKGROUND

Plaintiff operates a waste-collection business. Plaintiff and other small, independent waste-collection companies formed Macon County Landfill Corporation (Macon County Landfill) to run a landfill in which the corporate shareholders could dispose of their collected waste. They operated this landfill for approximately 30 years. In 1998, the landfill was sold to a

company named Superior.  As part of the sale, a solid-waste-disposal agreement was entered into between Macon County Landfill and each independent waste hauler.  Each waste hauler signed agreements with identical provisions.  On July 18, 1998, plaintiff entered into one of these agreements with Macon County Landfill.

The agreement required Macon County Landfill and its successors to accept and dispose of all solid waste collected, received, generated, or transported by the waste hauler, in this case, plaintiff.  The agreement required plaintiff to pay disposal rates subject to a yearly adjustment.  Plaintiff was required to bring all waste it collected to Macon County Landfill.  Attachments entitled "Exhibit A" and "Exhibit B" were attached to the agreement.  "Exhibit A," titled "Disposal Site," provided the name and address of the landfill.  "Exhibit B," titled "Disposal Rates," set forth the initial rates at the beginning of the contract.  On its face, "Exhibit B" included Macon County Landfill's address, telephone number, and hours and days of operation, including Saturday from "7:00 to 1:30."  The body of the contract itself did not set forth requirements for the hours and days of operation.  Later, defendant became the owner of Macon County Landfill and changed the name to Valley View Landfill (Valley View).

On approximately January 1, 2008, defendant began closing Valley View on Saturdays.  Plaintiff complained to defendant's personnel operating Valley View, to no avail.  On

- 2 -

September 29, 2008, plaintiff filed its complaint for a declaratory judgment, alleging defendant breached the agreement by failing to maintain Saturday hours at Valley View for collection of waste and asking for a rescission of the contract. In November 2008, defendant reopened Valley View on Saturdays. On November 12, 2008, defendant filed a motion to dismiss, arguing there was no current controversy because it reopened Valley View on Saturdays. On January 23, 2009, the trial court denied defendant's motion to dismiss.

On September 3, 2009, plaintiff filed a motion for summary judgment. On September 15, 2009, defendant filed a response to plaintiff's motion for summary judgment and a motion for summary judgment of its own. On September 21, 2009, plaintiff filed a response to defendant's motion for summary judgment. On November 12, 2009, the trial court heard arguments on the cross-motions for summary judgment. After taking the matter under advisement, the court denied both motions for summary judgment, finding (1) the only reasonable inference from the evidence was that under the disposal agreement, including exhibits A and B attached thereto, Macon County Landfill was required to be open for waste disposal on "Saturday from 7:00 to 1:30" and (2) more than one reasonable inference could be drawn from the evidence presented as to whether the Saturday closure of the landfill was a "material and important breach" "in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case."

On January 5, 2010, a bench trial was held. David Carter, plaintiff's current owner, testified Valley View had been closed on Saturdays from January 2008 to November 2008. Defendant presented some evidence Valley View had reopened on Saturdays in May 2008. Carter found another landfill, Clinton Landfill, where he hauled his waste on Saturdays and continued to haul it there after Valley View reopened on Saturdays. Although Clinton Landfill was a 15- to 20-minute drive farther away than Valley View, the parties stipulated the disposal rate at Clinton was less expensive than that at Valley View. Carter also testified Clinton Landfill offered to take all of plaintiff's waste for a rate $9 to $10 cheaper per ton than Valley View if plaintiff brought all of its waste there, thus improving plaintiff's ability to be competitive in the marketplace.

Clifford Carter, plaintiff's previous owner, and Glenn Lynch, previous owner of another independent garbage hauler, both retired, testified they were part of the negotiations for the agreement at issue as shareholders of Macon County Landfill. Having a landfill open on Saturdays was very important to them, and they would not have entered into the agreement absent a provision requiring the landfill to be open on Saturdays.

Clifford and David Carter and Lynch all testified they serviced both commercial and residential clients six days a week. They had Saturday pickups, which were mostly commercial, and needed a place to dump the waste collected that day. If waste collected on Saturday sat in the their enclosed trucks until

- 4 -

Monday, there was a danger methane gas would accumulate, which could lead to an explosion. Further, if their trucks were full on Monday morning, they needed to begin their days with a stop at the landfill to dump the accumulated waste before they could start their pickup routes. This would put them behind schedule as they would need to dispose of waste collected on Monday by the 3 p.m. closing time of the landfill on Monday. If they could not finish their routes on Monday, they would start Tuesday's routes behind schedule and never catch up for the week. This could result in loss of customers and eventually the possibility of going out of business.

David Carter was asked by defendant the costs incurred by plaintiff for disposing of collected waste at Clinton Landfill instead of Valley View. David Carter said he could not calculate those costs, but he stated if he had not located Clinton Landfill, he would have gone out of business and those costs were incalculable. Carter also stated, in addition to offering plaintiff a lower rate to dispose of collected waste, Clinton Landfill offered to purchase CC Disposal, Inc., from him and the value of his business would be higher if it was free of the contract with Valley View.

Christopher Rooney, regional manager for defendant, testified he did not know why defendant stopped opening Valley View on Saturdays as he did not work for it then. He presented one disposal receipt for a private individual for a Saturday in May 2008 to show Valley View was accepting waste on Saturdays.

Rooney testified to defendant's corporate plan of "vertical integration" which meant both the taking over of independent waste haulers by defendant in order to assure a steady supply of waste for its landfills but also the entering into of long-term contracts for independent haulers to bring their waste exclusively to defendant's landfills. Rooney admitted the trend in the waste-disposal industry was for large companies running many landfills to obtain the hauling businesses supplying their landfills.

Rooney was also asked to describe adjustments plaintiff could have made to his business to eliminate the need for Saturday landfill service. He prefaced his testimony by saying he was not familiar with how plaintiff's business was operated.

In closing argument, plaintiff argued one of the primary purposes of the agreement in question was for the landfill to accept waste on Saturdays and the agreement would not have been entered into without this provision, thus justifying rescission based on a material breach. Defendant argued plaintiff failed to prove it lacked an adequate remedy at law, i.e., money damages, thus failing to prove a qualification for an equitable remedy. Further, defendant argued plaintiff was motivated to seek rescission instead of money damages due to Clinton Landfill's offer to accept plaintiff's collected waste at a lower rate.

The trial court found Valley View had been closed on Saturdays from January 2008 to November 2008 but maintained

Saturday hours from November 2008 to the date of trial.  However, because Saturday hours were so important to waste haulers, the court concluded defendant materially breached the agreement.  Accordingly, the court ordered rescission of the contract.

## II. ANALYSIS

### A. Contract Requirement of Maintaining Saturday Hours

Defendant argues the content of the agreement should have led the trial court to conclude the agreement did not require Saturday hours.  Absent from the agreement is any term explicitly requiring particular hours at the landfill.  The sole reference to hours is in an attachment to the contract entitled "Exhibit B."  Defendant argues the agreement does not purport to incorporate the entirety of exhibit B into the contract as the only reference to exhibit B in the body of the agreement is to the initial rates for disposal of waste.

Defendant cites case law dealing with the interpretation of contract terms, such as whether terms are plain or unambiguous.  Plaintiff counters, arguing even if the contract terms are ambiguous, thus allowing for extrinsic evidence to be presented for interpretation of the meaning of the terms, defendant forfeited his right to present such evidence because he did not attempt to introduce it in the trial court.

The real issue here is not whether the words dealing with hours of operation are ambiguous; they are clear.  The issue is whether "Exhibit B," an attachment to the contract, is part of the contract and, therefore, its provisions are enforceable as

any other provision of the contract. The trial court found exhibit B to be a part of the contract and Macon County Landfill (predecessor of Valley View) would be open for and available for waste disposal on Saturdays from 7 to 1:30 based on all the evidence before it at the hearing on the cross-motions for summary judgment. The evidence included an affidavit from Glenn Lynch, who helped negotiate the agreement, stating a provision for Saturday hours of operation was important to the agreement and, thus, the provision for Saturday hours was included in the agreement.

While it might have been clearer for the parties negotiating the agreement to have included the hours the landfill was required to be open in the body of the agreement, the attachment "Exhibit B" was part of the agreement and set forth the hours of operation for the landfill. Provision for modifying the agreement is provided in article XIV of the agreement. If defendant wanted to change a term or condition of the agreement, it should have negotiated a written modification as provided instead of unilaterally deciding to close the landfill on Saturday. The trial court did not err in finding "Exhibit B" to be part of the contract agreed to by plaintiff and defendant's predecessor. Defendant does not argue it is not bound to the agreement as the successor owner of the Macon County Landfill. Thus, defendant is required to open Valley View on Saturdays.

B. Did Adequate Remedy at Law Exist

Rescission of a contract is an equitable remedy.

Building Partnership v. Testa Produce, Inc., 381 Ill. App. 3d 751, 757, 886 N.E.2d 1156, 1163 (2008). "An equitable remedy is not available where there is an adequate remedy at law." Newton v. Aitken, 260 Ill. App. 3d 717, 720, 633 N.E.2d 213, 216 (1994). Defendant argues rescission is not an available remedy in this case as plaintiff had an adequate remedy at law.

A trial court's decision no adequate remedy at law exists is reviewed for abuse of discretion. See Levitt Homes, Inc. v. Old Farm Homeowners' Ass'n, 111 Ill. App. 3d 300, 317, 444 N.E.2d 194, 205 (1982). If a party's injury can be adequately compensated through money damages, it has an adequate remedy at law. See Lumbermen's Mutual Casualty Co. v. Sykes, 384 Ill. App. 3d 207, 230-31, 890 N.E.2d 1086, 1106 (2008). A party seeking equitable relief has the burden of proving the inadequacy of a legal remedy. See Kerasotes v. Estate of Kerasotes, 238 Ill. App. 3d 1020, 1030-31, 605 N.E.2d 643, 651 (1992).

Defendant argues the trial court abused its discretion by failing to even consider whether an adequate remedy at law existed and plaintiff did not meet its burden of proof in proving the inadequacy of a legal remedy as money damages were available to plaintiff and the contract need not have been rescinded.

Defendant argues while David Carter testified he did not know how damage to plaintiff could be calculated, defendant contends the injuries plaintiff sustained were easily calculable. The cost differential between disposing of waste at Valley View

- 9 -

Landfill and Clinton Landfill was stipulated to by the parties and was negligible as noted by the trial court in its ruling on the cross-motions for summary judgment. The court made the finding Valley View was closed Saturdays for 11 months. Costs for gasoline, excess mileage, and additional travel time could have easily been calculated for those Saturdays. Economic damage such as wear and tear on plaintiff's waste-hauling vehicle could also be calculated. Taken together with the fact defendant had reopened on Saturdays, plaintiff had an adequate remedy at law.

Defendant maintains plaintiff chose not to make calculations and present its damages. Plaintiff cannot avoid a legal remedy by simply refraining from doing the simple math necessary to calculate damages. Defendant contends--without any explanation--(1) the trial court failed to consider the availability of legal remedy for plaintiff, thus abusing its discretion and (2) rescission, an equitable remedy, is inappropriate under these circumstances.

The trial court should have made a specific finding plaintiff had no adequate remedy at law before proceeding to consider equitable relief in the form of a rescission of the contract. However, the court did not abuse its discretion in ordering equitable relief in this case. Defendant's speculations about how damages could be calculated were just that, speculative, and the court was right to ignore them. David Carter, owner of plaintiff, stated he did not know how to calculate the damages sustained by plaintiff. Plaintiff was fortunate to find

another landfill to take its collected waste on Saturdays or it would have been forced out of business. It is impossible to put a dollar value on that.

Defendant argues even if the trial court found a breach in the agreement, it could have ordered money damages to make plaintiff whole and kept the original contract in place, preserving the original intent of the parties--the sale of the landfill by the original shareholders of the landfill corporation and a steady supply of waste for the new owners. A major portion of the intent of the parties was the landfill be operated on Saturdays for waste collection. Closing of Valley View on Saturday by defendant destroyed the original intent of the parties.

C. Material Breach Justifying Rescission

Defendant argues rescission of the waste-disposal agreement is a harsh result where defendant, successor of the party involved in the contract negotiations, was deemed to have committed a material breach by violating a contractual provision which did not clearly appear on the face of the agreement, thus leading defendant to interpret it as not constituting part of the agreement.

Rescission is the cancellation of a contract and the restoration of the parties to their status before the contract. Newton, 260 Ill. App. 3d at 719, 633 N.E.2d at 216. Rescission of a contract is an "extraordinary remedy." Finke v. Woodard, 122 Ill. App. 3d 911, 916, 462 N.E.2d 13, 16 (1984). However, a material breach of a contract justifies rescission. Newton, 260

Ill. App. 3d at 719, 633 N.E.2d at 216. Defendant contends contracts should not be rescinded unless the failure of the party to perform is a total one. "The object of the contract must have been defeated or rendered unattainable by his misconduct or default." Weintz v. Hafner, 78 Ill. 27, 29 (1875). Orders of rescission are reviewed for abuse of discretion. Newton, 260 Ill. App. 3d at 719, 633 N.E.2d at 215-16.

Defendant contends plaintiff proved only defendant's failure to maintain Saturday hours resulted in a minor inconvenience and expense that could be cured by monetary damages. Saturday closings did not fundamentally defeat the object of the contract. Valley View was closed to plaintiff 48 of approximately 3,500 business days from the time of the execution of the agreement to the date of the trial (about 1% of the days). Defendant argues rescission should be a remedy of last resort; used only where total breach occurred. Pursuant to the agreement, plaintiff continued to haul waste to Valley View on weekdays and it was accepted there. Defendant contends finding this conduct fundamentally defeated the contract was an abuse of discretion.

Defendant argues rescission is particularly inappropriate where a party is seeking redress on the basis a contract later became inconvenient or ill-advised. David Carter testified Clinton Landfill offered to take all of plaintiff's waste at $9 to $10 per ton cheaper than defendant, which would improve plaintiff's ability to remain competitive in the marketplace.

- 12 -

Carter also testified Clinton offered to purchase his business and the business would be more attractive to a potential buyer without the agreement with defendant. It is not the duty or function of a court to grant rescission of a contract voluntarily entered into between competent parties because the agreement later is "thought unwise or improvident." Scott & Fetzer Co. v. Montgomery Ward & Co., 129 Ill. App. 3d 1011, 1022, 473 N.E.2d 421, 430 (1984). However, no evidence showed plaintiff had any dealings with Clinton Landfill at all until defendant breached its agreement with plaintiff or that plaintiff wanted out of the agreement with defendant until after the breach.

When determining whether a breach is material, the test for materiality is whether a breach is of such nature and importance, if anticipated in advance, the agreement would not have been made. Galesburg Clinic Ass'n v. West, 302 Ill. App. 3d 1016, 1018, 706 N.E.2d 1035, 1037 (1999). Lynch and Clifford Carter testified, if independent garbage haulers had anticipated the then Macon County Landfill would not be open on Saturdays, they never would have signed the agreement prohibiting them from dumping at any other landfill.

In considering whether a breach of contract is material, the trial court should consider several other factors according to the Restatement (Second) of Contracts. Specifically, the court should consider (1) the extent to which the injured party will be deprived of the benefit he reasonably expected; (2) the extent to which the injured party can be

- 13 -

adequately compensated for the part of the benefit of which he will be deprived; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood the party failing to perform will cure his failure, taking account of all the circumstances; and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. Rubloff CB Machesney, LLC v. World Novelties, Inc., 363 Ill. App. 3d 558, 564, 844 N.E.2d 462, 467 (2006). In applying these factors, a court should keep in mind the detrimental effect uncertainty of performance can have on contracting parties. Restatement (Second) of Contracts §241, Comment e, at 241 (1981).

David Carter testified not being able to dump on Saturdays would disrupt and threaten the viability of his business. Saturday service was of utmost importance for small, independent operations. Plaintiff was deprived of a benefit it reasonably expected and for which it could not adequately be compensated. Although defendant did cure its failure by opening the landfill, it did not do so until after plaintiff filed this lawsuit, thus raising the question of whether its actions comported with standards of good faith and fair dealing. Defendant will suffer forfeiture of its contract with plaintiff, but that does not outweigh the other factors. Plaintiff was entitled to certainty of performance on the part of defendant.

Under these circumstances, it was not an abuse of discretion for the trial court to fully rescind the solid-waste-

disposal agreement between plaintiff and defendant.

                          III. CONCLUSION

        For the foregoing reasons, we affirm the trial court's
judgment.

        Affirmed.

        STEIGMANN and POPE, JJ., concur.