# Illinois Official Reports

## Appellate Court

---

**_Horwitz v. Sonnenschein Nath & Rosenthal_, 2018 IL App (1st) 161909**

---

| | |
|---|---|
| Appellate Court Caption | DONALD P. HORWITZ, Plaintiff-Appellant and Cross-Appellee, v. SONNENSCHEIN NATH & ROSENTHAL, Defendant-Appellee and Cross-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-1909 |
| Filed<br>Rehearing denied | June 29, 2018<br>July 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-43081; the Hon. Moshe Jacobius, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Steven H. Gistenson and Jennifer Warner, of Dykema Gossett PLLC, of Chicago, for appellant.<br><br>Walter Jones Jr. and Jorge Cazares, of Pugh, Jones & Johnson, P.C., of Chicago, for appellee. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case involves the intersection of law and equity and whether a legal remedy was adequate such that equitable relief was inappropriate.

¶ 2    Donald P. Horwitz was an equity partner at the law firm of Sonnenschein Nath & Rosenthal (SNR). In November 2000, he and SNR entered into a "special partnership agreement," whereby Horwitz would surrender his equity stake in exchange for a new deal that compensated him differently for his continued, but less frequent, work for the firm. In Horwitz's view, SNR began breaching this new agreement almost immediately by failing to adequately compensate him based on his contributions to the firm. Finally, after six years of alleged breaches by SNR, Horwitz sued SNR for breach of contract and for rescission.

¶ 3    SNR demanded a jury trial on the breach-of-contract claim, so the chancery judge assigned that trial to the law division. The jury awarded Horwitz $125,000 in damages—the difference, in the jury's eyes, between what Horwitz should have received under the special partnership agreement and what he actually received. At that point, said SNR, Horwitz had been made whole; he had obtained an adequate legal remedy, thus barring his equitable claim of rescission as a matter of law.

¶ 4    The chancery judge disagreed, and the rescission case proceeded to a bench trial. After trial, the chancery judge ruled that Horwitz had waited too long to bring his rescission claim and that Horwitz's claimed damages were too speculative to warrant recovery.

¶ 5    We agree with SNR that Horwitz obtained an adequate legal remedy on his breach-of-contract action, and thus he was barred, as a matter of law, from pursuing his equitable claim of rescission. We thus affirm the circuit court's dismissal of the rescission claim, albeit on a different ground.

¶ 6                              BACKGROUND

¶ 7    On August 18, 2006, Horwitz filed a three-count complaint against SNR in the chancery division of the circuit court of Cook County. Count I was an equitable claim seeking to rescind the written agreement Horwitz and SNR entered into in November 2000, pursuant to which Horwitz agreed to relinquish his equity stake in SNR and become a "special partner." Count II was a legal claim seeking damages for SNR's breach of the special partner agreement. Count III sought damages for unjust enrichment.

¶ 8    The chancery judge dismissed the complaint. Horwitz amended the complaint, and the court ultimately dismissed it again. In 2010, this court reversed that dismissal and remanded the matter for further proceedings. See *Horwitz v. Sonnenschein Nath & Rosenthal, LLP*, 399 Ill. App. 3d 965, 979 (2010).

¶ 9    After three years of discovery in the circuit court, in March 2013, SNR demanded a jury trial on the breach-of-contract claim in advance of a bench trial on the rescission claim. SNR's reasoning was that a judge sitting in chancery might make findings of fact that could be binding on a jury; to ensure that the jury's role as fact finder was not encroached upon, it was necessary to first try Horwitz's legal claims to a jury. Ultimately, in October 2013, the circuit court, over vigorous opposition from Horwitz, granted SNR's request and transferred the breach-of-contract action to the law division for a jury trial.

¶ 10    In April 2014, a judge sitting in the law division conducted a jury trial on Horwitz's breach-of-contract claim. During closing arguments, Horwitz's attorney asked the jury to award him an amount of damages that "would fairly compensate Mr. Horwitz for the production he had." The verdict form used by the jury asked it to assess damages by determining (1) "[t]he amount of money Mr. Horwitz should have received in addition to his retirement benefits if [SNR] had not breached the Contract" and (2) "[t]he amount of money Mr. Horwitz actually received from [SNR]."

¶ 11    The jury determined that (1) SNR should have paid Horwitz $373,000 and (2) SNR actually paid Horwitz $248,000. The jury thus awarded Horwitz the difference, or $125,000 in damages. The law division judge later entered judgment on the jury's verdict and transferred the case back to the chancery division.

¶ 12    When the case returned to the chancery division, SNR filed a motion opposing Horwitz's ability to further pursue his equitable rescission claim in light of the legal remedy he obtained in the law-division portion of the case. SNR maintained that the damages Horwitz was awarded in the breach of contract trial were an adequate remedy at law and thus negated his ability to seek equitable remedies. In September 2014, the chancery judge denied SNR's motion.

¶ 13    Undaunted, SNR then filed a "motion for a specific finding whether Horwitz received an adequate remedy at law." That motion requested exactly what its name suggested: a finding by the circuit court that the recovery Horwitz obtained in the law division trial was an adequate remedy at law, and a corresponding finding that Horwitz was therefore barred from seeking equitable remedies. Simultaneously, SNR also filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)), arguing that the circuit court lacked subject-matter jurisdiction over Horwitz's equitable claims because he did not file a posttrial motion after the law division judge entered judgment against Horwitz in the breach of contract trial. Both motions were summarily denied.

¶ 14    The case then proceeded to a bench trial on Horwitz's rescission claim. We summarize the evidence at trial as follows.

¶ 15    In 1990, Horwitz began working at SNR and soon became an equity partner. In 1997, a man named Duane Quaini became SNR's chairman. At trial, Quaini testified that when he became chairman, SNR's financial condition was "not good." He explained that SNR had "fallen behind" other Chicago law firms based on revenue metrics and partner income. That was problematic for SNR, according to Quaini, because it posed the "danger" that "partners *** will begin to leave because they can make more money" at other firms.

¶ 16    To correct course, in 1997, Quaini concluded that it was necessary for SNR to implement two changes. First, SNR decided to ask 17 equity partners, who were selected "based on their long-term lack of production," to either leave the firm or become special partners. And second, between 1997 and 1999, SNR, with some limited exceptions, began to require its partners to book 1800 billable hours annually. Quaini explained that the 1800-hour requirement was deemed necessary because SNR "had too many partners who were not working hard enough and we wanted to *** motivate them to work at acceptable levels." Horwitz, who during his tenure as equity partner never booked more than 1272 billable hours in a single year, was one of the equity partners that SNR asked to transition to the role of "special partner."

¶ 17    In November 2000, Horwitz and SNR entered into a letter agreement, pursuant to which Horwitz agreed to relinquish his equity stake in SNR and become, effective January 1, 2001, a

special partner. In turn, SNR agreed to compensate Horwitz based on, among other things, Horwitz's "then-current contribution to the Firm and the Firm's current practice with regard to compensating Special Partners." At trial, Horwitz testified that (1) SNR's obligation to compensate him based on his contributions to SNR was the "heart" of the special partner agreement, (2) he would not have entered into the agreement unless it contained that term, and (3) SNR could have not complied with the agreement by paying him a fixed salary.

¶ 18    Cracks soon appeared in the Horwitz/SNR relationship. In September 2001, Horwitz sent SNR a memorandum claiming responsibility for $945,000 in billings and stipulating that his 2001 billings could end up as high as $1.4 million. Yet to Horwitz's dismay, in January 2002, he was informed that his 2001 contribution-based bonus would be $71,000—a pittance compared to what he expected to receive. Horwitz protested, which prompted SNR to supplement his 2001 bonus with an additional $10,000 payment. Unsatisfied, Horwitz sent a memorandum to one of SNR's managers, again protesting that his 2001 contribution-based bonus was too low. Horwitz concluded by stating, "It appears I made a grave mistake in agreeing to retire five years early without a firm and detailed understanding of how I would be compensated during my years of early retirement."

¶ 19    In February 2002, Horwitz learned that his contribution-based bonus for 2002 would be $17,000. In early 2003, Horwitz was told that he would be paid an additional $21,000 for the year 2002. Including his retirement benefit of $62,000, that brought Horwitz's total compensation for 2002 to $100,000. In early 2004, Horwitz had a meeting to discuss his 2004 compensation. Horwitz was informed that his year-over-year special partner compensation was decreasing from $38,000 to $37,000 because his retirement pay was increasing from $62,000 to $63,000. In addition, according to Horwitz, SNR informed him that it was "moving towards paying me a fixed amount of $100,000 per year including my retirement benefit." Horwitz explained that being paid a fixed rate was not consistent with his special partner agreement because "[SNR] promised to pay me for what I contributed from time to time ***. It was never to be a fixed amount." Later at trial, Horwitz acknowledged having a meeting with SNR wherein he was informed that 2005 would be the last year he would receive a contribution-based bonus.

¶ 20    In March 2006, Horwitz appealed SNR's decision to the chairman, Quaini. The meeting resulted in no change in SNR's position with respect to Horwitz's compensation. Horwitz then filed this lawsuit in August 2006.

¶ 21    As stated above, the case finally terminated on June 14, 2016, when the chancery judge denied Horwitz's rescission claim in a carefully detailed memorandum opinion. The chancery judge ruled that Horwitz had waited too long—a good six years into the new agreement—to ask for a rescission claim that would unwind the contract and restore him to full equity-partner status. The court also found Horwitz's claims for damages speculative for two reasons. First, the points that SNR doled out to equity partners for profit-sharing on an annual basis greatly varied between partners, and it was impossible to know what point level plaintiff would have received. Second, equity partnership came up for renewal every two years, and it was pure speculation to assume that Horwitz would have survived the cut every two years over that six-year period from 2000 to 2006—especially given that SNR had obviously targeted Horwitz for a change in status, and Horwitz himself had contemplated a lesser role with the firm.

¶ 22    The chancery judge also specifically rejected, yet again, SNR's argument that Horwitz had an adequate remedy at law. The court's analysis bears quoting in full:

"This Court has continued to explain to [SNR] that the rescission claim is a separate legal claim based on different elements which [Horwitz] has at least a right to present at trial so that the Court might determine whether he is able to prove his claim. The rescission claim is based on the theory that [SNR] so violated the special partner agreement through no fault of [Horwitz] that he should be restored to his former status as an equity partner. In this context, it is vital to understand that restitution to the former position is an entirely separate remedy than a damages claim for breach of contract.

\*\*\*

In this case, Horwitz alleged that SNR wrongfully obtained the benefit of his equity interest which it utilized to its own aggrandizement by either dividing up his interest to other equity partners or to attract new equity partners to the firm. This is clearly not the equivalent of Horwitz's damages or losses. On his rescission claim, Horwitz was, at a minimum, permitted to proceed to trial to demonstrate that he should have been restored to his equity interest and to be made whole with regard to this right. The jury award did not, *ipso facto*, confer an adequate remedy upon Horwitz \*\*\*."

¶ 23    This appeal and cross-appeal followed.

¶ 24                                        ANALYSIS

¶ 25    In his appeal, Horwitz argues that the circuit court erred in denying his rescission claim for various reasons. SNR has filed a cross-appeal; among its arguments is that the rescission trial never should have been held because Horwitz's recovery in the breach-of-contract trial constituted an adequate remedy at law, and so the circuit court should have dismissed the rescission claim immediately when the case was transferred back to the chancery division. We may affirm the trial court's judgment following a bench trial on any basis in the record, regardless of whether the trial court relied on that basis. *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 25.

¶ 26    Before we reach the merits, however, we must address a purported defect in the circuit court's subject-matter jurisdiction that SNR raises. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002) ("[T]his court has an obligation to take notice of matters which go to the jurisdiction of the circuit court \*\*\*."). SNR points to the jury verdict in the law division on the breach-of-contract claim and notes that Horwitz did not file a posttrial motion for new trial or judgment *n.o.v.* claiming that the jury's award of damages was insufficient. Instead, the law division judge simply entered judgment on the verdict. In SNR's view, because Horwitz left the jury's verdict on the breach-of-contract count undisturbed, he "waived the argument that his jury award was not an adequate remedy at law—a finding that is necessary for Horwitz's equitable claims." SNR views the adequacy of a legal remedy as a jurisdictional bar to the chancery court even considering the rescission claim.

¶ 27    It is one thing to say that, if an adequate legal remedy is available to Horwitz, his equitable claim is barred as a matter of law. It is quite another, however, to say that Horwitz's adequate legal remedy means the chancery court *lacks jurisdiction* over that rescission claim. The former statement is indisputably correct. The latter is flat wrong.

¶ 28    Subject-matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceeding in question belongs. *Id.* Aside from the court's power to review administrative actions, which is conferred by statute, "a circuit court's subject matter

jurisdiction is conferred entirely by our state constitution," specifically section 9 of article VI. *McCormick v. Robertson*, 2015 IL 118230, ¶ 19; see Ill. Const. 1970, art. VI, § 9. Section 9 confers upon the circuit court subject-matter jurisdiction over "all justiciable matters" other than redistricting or actions involving the governor's ability to serve. Ill. Const. 1970, art. VI, § 9. The point here is "to create a single integrated trial court structure [citation], thereby vesting the circuit courts with jurisdiction to adjudicate all controversies." *Stevens v. Protectoseal Co.*, 27 Ill. App. 3d 724, 729 (1975).

¶ 29    In so doing, our 1970 constitution effectively "abolished the distinction between courts of law and equity" in Illinois. *Id.* As such, "so long as a case presents a justiciable matter, the circuit court has jurisdiction and the presence or absence of an adequate remedy at law is an irrelevant consideration." *Id.* The chancery judge did not lack jurisdiction to hear the rescission claim, nor do we lack jurisdiction to review the court's judgment on appeal.

¶ 30    With our jurisdiction confirmed, we turn to the merits of SNR's claim that Horwitz's rescission claim was barred because he had an adequate legal remedy.

¶ 31    It has been long established that a court will not grant equitable relief if the plaintiff has an adequate remedy at law. *Anderson v. Olsen*, 188 Ill. 502, 506 (1900); *Black v. Miller*, 173 Ill. 489, 491-92 (1898); see *Watson v. Sutherland*, 72 U.S. (5 Wall.) 74, 79 (1866) ("The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction ***."); *Lonesome Dove Petroleum, Inc. v. Holt*, 889 F.3d 510, 516 (8th Cir. 2018) (" '[T]he touchstone for equity is the lack of an adequate legal remedy.' " (quoting *Superior, Inc. v. Behlen Manufacturing Co.*, 2007 ND 141, ¶ 17, 738 N.W.2d 19)). The absence of an adequate remedy at law is not an element of an equitable claim but rather a condition precedent to seeking equity itself. *CC Disposal, Inc. v. Veolia ES Valley View Landfill, Inc.*, 406 Ill. App. 3d 783, 789 (2010); see *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("The absence of an adequate remedy at law is a precondition to any form of equitable relief.").

¶ 32    Reflecting its deep and well-understood roots in the law of equity, Illinois courts have faithfully applied the adequacy rule across the spectrum of equitable claims. See, *e.g.*, *Devyn Corp. v. City of Bloomington*, 2015 IL App (4th) 140819, ¶ 73 (equitable accounting); *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762, 772 (2009) (injunctions); *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 567 (2004) (unjust enrichment); *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 175 (1998) (equitable lien and *quantum meruit*); *Dickens v. Quincy College Corp.*, 245 Ill. App. 3d 1055, 1061-62 (1993) (partial performance); *Patrick Media Group, Inc. v. City of Chicago*, 255 Ill. App. 3d 1, 8 (1993) (reformation); *Abrams v. Rapoport*, 163 Ill. App. 3d 748, 753 (1987) (specific performance).

¶ 33    Rescission is no different. Rescission of a contract is an equitable remedy that cancels a contract and restores the parties to the *status quo ante*—the status before the contract. *Newton v. Aitken*, 260 Ill. App. 3d 717, 719 (1994). As with other equitable remedies, a court will not grant rescission if the plaintiff has an adequate remedy at law. *Id.* at 720; see also *CC Disposal*, 406 Ill. App. 3d at 789 ("The trial court should have made a specific finding plaintiff had no adequate remedy at law before proceeding to consider equitable relief in the form of a rescission of the contract."); *Scott & Fetzer Co. v. Montgomery Ward & Co., Inc.*, 129 Ill. App. 3d 1011, 1021-22 (1984) (trial court properly denied rescission claim, as it was "axiomatic that it is not error for the trial court to deny equitable relief when an adequate remedy at law exists" and "[i]n the case before us, an adequate remedy at law exist[ed]"—contractual damages),

*aff'd*, 112 Ill. 2d 378 (1986); see also *Dow Chemical Co. v. United States*, 226 F.3d 1334, 1345-46 (Fed. Cir. 2000) ("Because rescission is essentially an equitable remedy, it will not ordinarily be invoked where money damages—in this case damages for breach of contract—will adequately compensate a party to the contract.").

¶ 34    The chancery court did not take issue with this well-established principle. Rather, the court simply ruled that Horwitz's remedy for breach of contract was *not* adequate. Indeed, while the legal principle has been settled for centuries, its application in a given case may be more difficult. Whether a legal remedy is "adequate" is an intensely case-specific inquiry.

¶ 35    As our supreme court has made clear, the question of whether a legal remedy is "adequate" entails two discrete inquiries. First and foremost, the court must consider whether the legal remedy is capable of making the plaintiff "whole." See, *e.g.*, *Linder v. Potier*, 409 Ill. 407, 410 (1951) (to be entitled to equitable remedy for breach of contract, "it must appear that the promisee cannot be made whole by damages, or by other adequate remedy at law"); *Weir v. Weir*, 287 Ill. 495, 502-03 (1919) ("[U]nless the one who has performed the contract in good faith can be made whole in damages he is left without any adequate remedy at law ***."); see also *CC Disposal*, 406 Ill. App. 3d at 788 ("If a party's injury can be adequately compensated through money damages, it has an adequate remedy at law."). The wholeness requirement keeps the adequacy formulation in lockstep with the purpose of compensatory damages in a breach-of-contract action: "to make the injured party whole and not to give him a profit." *J.F. Equipment, Inc. v. Owatonna Manufacturing Co.*, 143 Ill. App. 3d 208, 217 (1986).

¶ 36    The second requirement is that the legal remedy must be "clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." (Internal quotation marks omitted.) *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 549 (1977); *Devyn Corp.*, 2015 IL App (4th) 140819, ¶ 73; *Fischer v. Brombolich*, 207 Ill. App. 3d 1053, 1065 (1991); *Cullen Electric Co. v. Cullen*, 218 Ill. App. 3d 726, 734 (1991); *Prairie Eye Center, Ltd. v. Butler*, 329 Ill. App. 3d 293, 304 (2002). So it must be more than a theoretical right to recovery. The court takes a practical view of the circumstances in determining whether the legal remedy could make the plaintiff whole.

¶ 37    For example, we found rescission appropriate, for lack of an adequate legal remedy, in *CC Disposal*, 406 Ill. App. 3d at 786, where the plaintiff waste-disposal company contracted with the defendant landfill to dump its residential and commercial waste six days a week, only to have the landfill later decide to close on Saturdays. We upheld the trial court's finding that the legal remedy for breach of contract was inadequate based on the plaintiff's testimony at trial that the closing of the landfill on Saturdays interfered with the plaintiff's entire schedule of waste hauling, thus threatening the viability of the company. *Id.* at 791. We agreed with the trial court that it was "impossible to put a dollar value" on the loss of an entire business. *Id.* at 789.

¶ 38    In *Trainor*, 68 Ill. 2d at 549, our supreme court held that a temporary restraining order was properly entered to prevent the Department of Public Aid from stripping a company of its status as a Medicaid provider. The court reasoned that the company's suspension "would cause damages of an uncertain magnitude," given that 90 percent of the company's business involved Medicaid payments. *Id.* And a legal remedy might be unavailable, in any event, as "[a]ny subsequent action against the State by the plaintiff for damages resulting from an unlawful suspension would certainly raise issues of governmental immunity." *Id.*

¶ 39 On the other hand, we found the legal remedy adequate, and rescission thus inappropriate, in *Scott & Fetzer Co.*, 129 Ill. App. 3d at 1013, a case involving a fire at a Montgomery Ward (Wards) warehouse in Bensenville. Among other things occurring in that case, Wards sued the fire-alarm company, Burns Electronic Security Services, Inc. (Burns), seeking rescission of its contract. *Id.* The contract between Wards and Burns limited the liability of Burns for fire damage to the warehouse to " '10% of the annual service charge or $250.00, whichever is the greater.' " *Id.* at 1014. Wards argued that rescission was appropriate and that the legal remedy was "not as 'complete' as those available to it if the contract were rescinded." *Id.* at 1022. This court upheld the dismissal of the rescission count, agreeing with Burns that the legal remedy was appropriate, and thus rescission was not. It made no difference that Wards was "unhappy with its contractual remedy" or that it later found the agreement "unwise or improvident." *Id.* Wards got what it bargained for in the event of a breach, even if, in hindsight, it would have preferred a greater recovery. *Id.*

¶ 40 We also upheld the trial court's refusal to grant the equitable remedy of specific performance in *Abrams*, 163 Ill. App. 3d at 753, where the plaintiffs claimed a breach of the implied warranty of habitability in the defendant's construction of their condominium units. We reasoned that the plaintiffs had an adequate legal remedy of "money damages for the reasonable cost of correcting the defects or completing any necessary construction, or for any diminution in value attributable to the defect where reconstruction would result in economic waste." *Id.* Thus, the trial court properly directed a verdict in the defendant's favor on the specific-performance count. See *id.*

¶ 41 The different circumstances of various cases make it impossible to craft bright-line rules as to when a legal remedy is adequate. The argument could be raised at the outset of the case, as it often does with actions for injunctive relief, like *Trainor*. The argument could be raised at the pleading stage (*Scott & Fetzer*), by way of summary judgment, at the close of the plaintiff's case at trial (*Abrams*), or at the close of trial as a whole (*CC Disposal*). It may require sworn testimony, as in *CC Disposal*; the contract alone may be the decisive factor, as in *Scott & Fetzer*; or the common law may supply the answer in and of itself, as with *Abrams*. In many cases, such as *Trainor*, it may simply be too early in the litigation to know with certainty whether the legal remedy is clear, practical, and sufficient to make the plaintiff whole.

¶ 42 But we have none of those vagaries here. Under no plausible view could we say that it was "impossible to put a dollar value" (*CC Disposal*, 406 Ill. App. 3d at 789) on Horwitz's damages for breach of contract. It was not only possible; it happened. The contract action went to trial. Horwitz asked the jury to give him the difference between what he should have received from SNR, had the special partnership contract not been breached, and what he did receive. The jury did that: it determined that a breach occurred, it determined how much money SNR should have paid Horwitz under the special partner agreement ($373,000), it subtracted what SNR actually paid Horwitz ($248,000), and it awarded Horwitz the difference ($125,000). In the jury's mind, it made Horwitz whole.

¶ 43 Not in Horwitz's mind, to be sure. But he did not appeal that judgment, nor did he seek a new trial or an additur. And the completeness of the legal remedy surely cannot depend on whether the plaintiff is happy with what the jury awarded him. See *Scott & Fetzer Co.*, 129 Ill. App. 3d at 1022 (defendant not entitled to rescission merely "because it is unhappy with its contractual remedy").

¶ 44    Nor does it matter that Horwitz could have recovered a greater sum by ripping up the special partnership contract and returning to his pre-contract status as an equity partner. Even if it were possible to accomplish that feat (the chancery judge believed it was not, that Horwitz's claimed rescission damages were too speculative (see *supra* ¶ 21)), a legal remedy is adequate if it makes the plaintiff whole for the breach of contract—if it awards the plaintiff the difference between what he deserved under the contract and what he received under the contract. An *adequate* legal remedy should not be confused with the best or maximum remedy. Equitable principles do not intervene to give a plaintiff the best possible outcome or merely to add another weapon to a plaintiff's arsenal. They enter the picture if and only if the legal remedy cannot make a plaintiff whole. See *Scott & Fetzer Co.*, 129 Ill. App. 3d at 1022.

¶ 45    In reaching the opposite conclusion, the chancery judge first emphasized that Horwitz's rescission claim was a "separate legal claim based on different elements" than the breach of contract claim. No doubt, a breach-of-contract claim is different than a claim for rescission or, for that matter, any other equitable claim. That will always be true. If that made a difference, no legal remedy would ever be deemed adequate.

¶ 46    The chancery judge also reasoned that, because Horwitz's rescission claim sought that he be "restored to his equity interest and to be made whole with regard to this right," the jury's verdict was not an "*ipso facto*" adequate remedy. But Horwitz had a right to be made "whole" with regard to his equitable claim if and only if he could *not* be made "whole" via his *legal* remedy for breach of contract. The jury awarded him damages to make him whole for the breach. He was thus entitled to no further relief under the law.

¶ 47    Horwitz willingly entered into a contract with SNR. He is entitled to the benefit of that contract. The jury awarded him damages to give him that benefit. His legal remedy was thus adequate, and his claim for rescission was barred as a matter of law. We thus affirm the trial court's dismissal of the rescission claim, albeit on a different ground.

¶ 48    Affirmed.